CONTACT II, INC. and SouthCo,
Inc., Petitioners,

v.

PENNSYLVANIA STATE HORSE
RACING COMMISSION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued May 9, 1995.
Decided Aug. 1, 1995.

John J. Mezzanotte, Jr., for petitioner, Contact II, Inc.

Michael F.X. Gillin, for petitioner, South-Co, Inc.

Jorge M. Augusto, Assistant Counsel, for respondent.

Christopher J. Bailey, for intervenor, Bansalem Racing Association, Inc.

Before PELLEGRINI and KELLEY, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

Contact II, Inc. (Contact) and SouthCo, Inc. (SouthCo) appeal an order of the Pennsylvania State Horse Racing Commission (Commission) which approved Part I of a Nonprimary Location Statement (Statement) submitted by the Bensalem Racing Association, Inc., Philadelphia Park (Bensalem).[1] We quash this appeal for lack of jurisdiction.

The Race Horse Industry Reform Act[2] (Act) governs the establishment of nonprimary locations. A "nonprimary location" is "[a]ny facility in which pari-mutuel wagering is conducted pursuant to this act other than the primary racetrack location." 4 P.S. § 325.102. In accordance with section 218 of the Act, any licensed corporation[3] seeking to establish a nonprimary location shall submit a nonprimary location statement to the Commission. 4 P.S. § 325.218(g)(5)(i). The procedures and requirements for filing a nonprimary location statement are set forth in the Commission's regulations at 58 Pa.Code § 171.22. These regulations state that a nonprimary location statement will be considered, and may be submitted, in three parts. 58 Pa.Code § 171.22. Part I concerns the location of the proposed nonprimary location.[4] 58 Pa.Code § 171.22(a)(1).

1. Bensalem is an intervenor in this appeal pursuant to Pa.R.A.P. 1531.

2. Act of December 17, 1981, P.L. 435, *as amended*, 4 P.S. §§ 325.101–325.402.

3. A licensed corporation is a corporation that has obtained a license from either the State Horse Racing Commission or the State Harness Racing Commission to conduct thoroughbred or harness

horse race meetings, respectively, with pari-mutuel wagering. 4 P.S. § 325.102.

4. Part II of a nonprimary location statement concerns the physical details of the facility, including seating capacity, dining accommodations, rest rooms, parking areas and equipment to be used in the facility. 58 Pa.Code § 171.22(a)(2). Part III of a nonprimary loca-

On December 15, 1993, Bensalem submitted Part I of the Statement to the Commission, requesting permission to situate a non-primary location in Concordville, Delaware County, Pennsylvania. On June 6, 7, 8 and 9, 1994, the Commission placed an advertisement in the Delaware County Times notifying the public that a public comment hearing would be held on June 21, 1994.[5]

Contact is a non-profit corporation organized by the residents of Concord Township, and SouthCo is a corporate entity which owns and occupies the tract of land abutting the north and west boundaries of the site for the proposed nonprimary location. On or about June 14, 1994, Contact and SouthCo filed a motion with the Commission for a continuance of the public hearing scheduled for June 21, 1994. Contact also filed a motion requesting an evidentiary hearing with respect to the Statement and requesting that the Commission subpoena for attendance at the hearing the president of Bensalem as well as Bensalem personnel who had prepared the Statement. By order dated June 17, 1994, the Commission denied the motion

for a continuance which had been filed by Contact and SouthCo.[6]

On June 20, 1994, Contact and SouthCo filed with this court an application for a temporary restraining order, which included a request for a preliminary injunction. Contact and SouthCo alleged that adequate and reasonable notice of the public hearing had not been given. This court, per curiam, denied the application for a temporary restraining order and accompanying request for a preliminary injunction.

On June 21, 1994, the Commission held an evidentiary hearing concerning the proposed nonprimary location.[7] Following the conclusion of the public hearing, the Commission requested that Bensalem submit to it the lease for the real property where the proposed nonprimary location was to be constructed.[8] As set forth by the Commission's regulations, this request for additional information from Bensalem tolled the 60–day time period within which the Commission was required to make a decision on Part I of the Statement. 58 Pa.Code § 171.22(b). On or

tion statement concerns employees, vendors, security arrangements, insurance policies, permits and licenses. 58 Pa.Code § 171.22(a)(3).

5. Upon receipt of the information, documents and exhibits required in Part I of the Statement, and if the information, documents and exhibits are complete and indicate compliance with the Act, the Commission will request public comments and schedule a public hearing. 58 Pa. Code § 171.22(b). The purpose of the public hearing is to assist the Commission in assessing the impact that a proposed nonprimary location will have on the local community. 58 Pa.Code § 171.23(c).

The Commission's regulations state that the notice of the public hearing shall be published on at least 4 consecutive days in a prominent section of a newspaper of general circulation for the county in which the nonprimary location is to be situated. 58 Pa.Code § 171.23(b). For a description of the public hearing notice, *see* 58 Pa.Code § 171.23(a).

6. We note that Contact's motion requesting an evidentiary hearing was granted by the Commission at the hearing held on June 21, 1994. Reproduced Record (R.) at 92a. However, Contact's request for subpoenas was denied. R. at 93a–94a.

7. Section 218 of the Act states that in determining whether a nonprimary location statement

meets the legislative intent of the Act, the Commission shall consider factors which include, but are not limited to, the following:

 (A) The purposes and provisions of the Act.
 (B) The public interest.
 (C) The integrity of live racing.
 (D) The impact on the local community.
 (E) The potential for job creation.
 (F) The quality of the physical facilities and all services to be provided therein.
4 P.S. § 325.218(g)(5)(iii).

8. A copy of the lease, purchase option or purchase agreement for a nonprimary location must be submitted with Part I of a nonprimary location statement. 58 Pa.Code § 171.22(a)(1)(iii).

Bensalem included with Part I of the Statement a lease agreement between Lawrence DiSabatino, as lessor, and Brandywine Turf Club, Inc., as lessee, for the real property where the proposed nonprimary location would be situated. Brandywine Turf Club, Inc. is a wholly-owned subsidiary of Bensalem. During the time between the filing of the Statement and the evidentiary hearing on June 21, 1994, the parties to the lease agreement changed. United Artists Realty Company assumed ownership of the property from DiSabatino. At the hearing, Bensalem stated that it had reached an agreement in principle with United Artists Realty Company for a purchase lease agreement which was due to be executed within the next seven days. R. at 101a.

about November 8, 1994, a new lease agreement for the real property where the proposed nonprimary location would be situated was executed by United Artists Realty Company, as lessor, and Brandywine Turf Club, Inc., as lessee. Bensalem submitted a copy of the lease agreement to the Commission on November 10, 1994. On November 10, the Commission re-started its regulatory 60–day time period within which it had to render a decision on Part I of the Statement.

On November 16, 1994, the Commission approved Part I of the Statement which had been submitted by Bensalem. Contact and SouthCo now appeal the Commission's determination to this court.

 Although none of the parties questions this court's jurisdiction to hear this appeal, we are obligated to raise the jurisdictional issue *sua sponte. Department of Transportation v. Kmetz,* 129 Pa.Commonwealth Ct. 97, 564 A.2d 1040 (1989), *petition for allowance of appeal denied,* 525 Pa. 638, 578 A.2d 931 (1990). This court has jurisdiction to hear appeals from final orders, interlocutory appeals as of right and interlocutory appeals by permission. Based upon our review of the Act, the Commission's regulations and the evidence in this case, we conclude that the Commission's order with respect to Part I of the Statement is not a final order.

Section 763 of the Judicial Code states that this court shall have exclusive jurisdiction over appeals from final orders of government agencies.[9] 42 Pa.C.S. § 763. Pennsylvania Rule of Appellate Procedure 341, which was amended effective July 6, 1992, defines final orders. It states in pertinent part:

(a) **General Rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

(b) **Definition of Final Order.** A final order is any order that:

(1) disposes of all claims or of all parties; or

(2) any order that is expressly defined as a final order by statute; or

(3) any order entered as a final order pursuant to subsection (c) of this rule.

(c) When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims or parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims or parties shall not constitute a final order.

Pa.R.A.P. 341.

This court has stated that the amendments to Pa.R.A.P. 341 were meant to create a bright-line test as to final orders and to eliminate piece-meal litigation. *Smaha v. Landy,* 162 Pa.Commonwealth Ct. 136, 638 A.2d 392, *petition for allowance of appeal denied,* 539 Pa. 660, 651 A.2d 546 (1994). Prior to the amendments to Rule 341, the law required that a case-by-case approach be applied in deciding if the issue(s) appealed should be labelled interlocutory or final. *Bell v. State Farm Mutual Automobile Insurance Company,* 430 Pa.Superior Ct. 435, 634 A.2d 1137 (1993). This approach spawned a patchwork of decisions which, instead of fostering jurisprudential law, caused a proliferation of appeals by those practition-

---

9. Section 763 of the Judicial Code states in pertinent part:

(a) **General rule.**—Except as provided in subsection (c), the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of government agencies in the following cases:

(1) All appeals from Commonwealth agencies under Subchapter A of Chapter 7 of Title 2 (relating to judicial review of Commonwealth agency action) or otherwise and including appeals from the Environmental Hearing Board, the Pennsylvania Public Utility Commission, the Unemployment Compensation Board of Review and from any other Commonwealth agency having Statewide jurisdiction.

(2) All appeals jurisdiction of which is vested in the Commonwealth Court by any statute hereafter enacted.

42 Pa.C.S. § 763(a).

ers who did not want to be caught in the web of the waiver doctrine or statute of limitations for failing to appeal an order (uncertain as to its finality aspect) in a timely fashion. *Id.* Now, with the formulation of the amendments to Rule 341, generated by the Appellate Rules Committee and approved by our Supreme Court, it is stated in clear and unequivocal terms, counseling against piecemeal litigation, that a final order is any order that disposes of all claims or of all parties, save in those instances in which the lower tribunal enters an order as to one or more but fewer than all the claims or parties and expressly determines that an immediate appeal would facilitate resolution of the entire case. *Id.*

In the present case, the Commission has only issued an order with respect to Part I of the Statement submitted by Bensalem. In order to obtain approval for the proposed nonprimary location, Bensalem must still submit Parts II and III of the Statement for review by the Commission.

The Commission's regulations indicate that consideration of a nonprimary location statement is to proceed directly from Part I to Part II to Part III. The Commission's regulations state in pertinent part as follows:

(b) Upon receipt of the information, documents and exhibits required in Part I of the Statement, and if the information, documents and exhibits are complete and indicate compliance with the act and this part, the Commission will request public comments and schedule a public hearing as described in § 171.23 (relating to public hearings and public comment). Within 60 days of the later of the expiration of the public comment period or holding of the public hearing, the Commission will forward written notice of its decision concerning the proposed site of the nonprimary location to the applicant or request additional information from the applicant.

(c) Upon receipt of the information, documents and exhibits required in Part II of the Statement, and if the information, documents and exhibits are complete and indicate compliance with the act and this part and following approval of the site of the nonprimary location as submitted in Part I of the Statement, the Commission will begin consideration of the proposed facility. Within 60 days of the later of either the written approval of Part I of the Statement, or the receipt of the information, documents and exhibits requested in Part II of the Statement, the Commission will forward written notice of its decision concerning the proposed facility to the applicant or request additional information from the applicant.

(d) Pari-mutuel wagering at a nonprimary location may not be commenced until the Commission has issued written approval of the information, documents and exhibits requested in Part III of the Statement. Within 30 days of completion of construction and renovation of the facility and the receipt of the information, documents and exhibits requested in Part III of the Statement, the Commission will either forward written notice of its decision concerning approval of the nonprimary location or request additional information.

58 Pa.Code § 171.22(b), (c) and (d). We emphasize that, pursuant to the specific language of these regulations, the Commission will give *approval of the nonprimary location* after the receipt of the information, documents and exhibits requested in Part III of the Statement. 58 Pa.Code § 171.22(d).

Since the Commission's order with respect to Part I of the Statement does not dispose of all claims or all parties, it is not a final order which can properly be appealed to this court.[10] As such, this court lacks subject matter jurisdiction over this appeal.

Accordingly, the appeal of Contact and SouthCo is quashed.

---

**10.** In this case, we note that we do not have one of the seven specified interlocutory orders which is appealable as of right under 42 Pa.C.S. § 702(a) and Pa.R.A.P. 311. As for being an interlocutory appeal by permission, a petition for permission to appeal, as required by Pa.R.A.P. 1311(b), was not filed by Contact or SouthCo. As such, the Commission's order has not received our permission to be appealed and cannot be so considered. *Barron v. City of Philadelphia*, 160 Pa.Commonwealth Ct. 392, 635 A.2d 219 (1993).

### ORDER

NOW, this 1st day of August, 1995, the appeal of Contact II, Inc. and SouthCo, Inc. from the order of the Pennsylvania State Horse Racing Commission, dated November 16, 1994, is quashed.

