**WEST PITTSBURGH PARTNERSHIP on behalf of the WEHAV GOVERNING COMMISSION, Fraternal Order of Police Fort Pitt Lodge No. 1 and Alan Hertzberg**

**v.**

**Robert McNEILLY, Tom Murphy and the City of Pittsburgh**

**Appeal of West Pittsburgh Partnership on behalf of WEHAV Governing Commission and Alan Hertzberg.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2003.

Decided Jan. 8, 2004.

13. Section 1005-A of the MPC was added by the Act of December 21, 1988, P.L. 1329.

Alan Hertzberg, Pittsburgh, for appellant.

Susan E. Malie, Pittsburgh, for appellees.

BEFORE: LEADBETTER, J., and LEAVITT, J., and JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

West Pittsburgh Partnership for Regional Development (WP Partnership), a community development corporation acting on behalf of the neighborhood improvement district, known as West End Home Assurance Value (WE–HAV), and Alan D. Hertzberg, a Pittsburgh City Councilman, appeal from the order of the Court of Common Pleas of Allegheny County (common pleas). Common pleas denied their petition for a preliminary injunction and dismissed two of the three Counts of their complaint. We affirm the denial of the preliminary injunction. Inasmuch as the dismissal of two Counts of the complaint does not dispose of all claims against all parties, that ruling does not qualify as a final order under Pa. R.A.P. 341(b) and, therefore, we do not review that determination at this time.

WP Partnership, on behalf of WE–HAV, along with the Fraternal Order of Police Fort Pitt Lodge No. 1 and Councilman Hertzberg filed the present action for an injunction prohibiting the City of Pittsburgh (City), its Mayor, Tom Murphy, and Chief of Police, Robert McNeilly, from closing the Zone 4 police station. The plaintiffs contend that the closure of the

police station violates a duty imposed under the Neighborhood Improvement District Act (Act), the Act of December 20, 2000, P.L. 949, §§ 1—10, 73 P.S. §§ 831—840, and under a memorandum of understanding between the City and WP Partnership on behalf of WE–HAV.

The Act authorizes and regulates the creation and operation of neighborhood improvement districts for the purpose of enhancing neighborhood safety, employment and economic stability and growth.[1] Under the Act, a municipality, its businesses, its residents or a combination thereof may establish a neighborhood improvement district. Section 5, 73 P.S. § 835. The municipality is vested with the power to designate a newly created or an existing community development corporation with authority to administer a neighborhood improvement district. Section 4, 73 P.S. § 834. Based on this power, the City Council passed Resolution No. 478 (a.k.a. Council Bill No. 5 of 2002) creating a neighborhood improvement district in Pittsburgh's western neighborhoods, as specifically delineated on an attached map,[2] and appointed WP Partnership as the Neighborhood Improvement District Management Association.

The Act permits municipalities to establish by local ordinance "the type of assessment-based programs most consistent with neighborhood needs, goals and objectives as determined and expressed by property owners in the designated district." Section 2(4), 73 P.S. § 832(4). Pursuant to this directive and the resolution, the City designated WE–HAV to operate a program, described by common pleas as:

> [A] type of community collective insurance against depreciating home values. Owner/occupants of residential properties within the NID [neighborhood improvement district] may (after paying an annual $20 assessment fee, obtaining an approved appraisal of the value of their home, and satisfying certain additional conditions for at least five years), draw monies from a "guarantee fund" in the event they sell their home for less than the appraised value.

*West Pittsburgh Partnership v. City of Pittsburgh*, (No. GD03–16443, op. filed October 28, 2003) at 3. In addition, the resolution authorized the City to enter an agreement, as required under the Act, detailing the respective duties and responsibilities of the City and WP Partnership. Accordingly, the City and WP Partnership executed a memorandum of understanding, which in pertinent part contained a provision required under Section 5(C)(3)(iv) of the Act, 73 P.S. § 835(C)(3)(iv),[3] as follows:

1. Section 2 of the Act describes the purpose, in pertinent part, as follows:

> [I]nitiate and administer programs to promote and enhance more attractive and safer commercial, industrial, residential and mixed-use neighborhoods; economic growth; increased employment opportunities; and improved commercial, industrial, business districts and business climates.

73 P.S. § 832(3).

2. In its brief to our court, WP Partnership identifies the neighborhoods within the district as follows: Crafton Heights, Chartiers City, Ridgmont, West End (excluding South Main Street and Wabash Avenue), Elliott, Westwood, Oakwood, Esplen, Sheraden, Fairywood, East Carnegie and Windgap.

3. Section 5(C) lists the particular requirements for the neighborhood improvement district plan and in particular subsection (3) directs that the plan:

> (ii) Require that a written agreement be signed by the municipal corporation and the NIDMA [neighborhood improvement district management association] describing in detail their respective duties and responsibilities.
>
> ....
>
> (iv) Require in the agreement between the municipal corporation and the NIDMA

The City agrees to maintain the same level of municipal programs and services provided within the district prior to the establishment of the WE–HAV program.

On August 18, 2003, approximately three months after the parties signed the memorandum of understanding, the City announced its intent to close the Zone 4 police station, one of six stations serving the City. The Zone 4 station was located just outside the border of the mapped boundaries of the WE–HAV neighborhood improvement district and primarily provided service to that neighborhood. The City declared that, as of August 29, the delivery of services based at the Zone 4 station would merge with those based at the Zone 3 station, which would survive the reorganization. According to Councilman Hertzberg, the Zone 3 station is located approximately two to three miles away from the Zone 4 station, nearer to the south side neighborhoods than to the properties within the WE–HAV district.

Plaintiffs filed their complaint on August 25 seeking to enjoin closure of the station on the ground that its closure would result in decreased police service in the WE–HAV district, thereby breaching the City's contract and statutory duty to maintain programs and services as those existing prior to the establishment of the district. In conjunction with their action, plaintiffs petitioned for a preliminary injunction and they requested that common pleas either schedule a hearing thereon prior to the planned closure on August 25 or, without a hearing, grant a special injunction. Common pleas denied these requests and a hearing on the preliminary injunction convened on September 19; meanwhile the City closed the station as planned. The day before the hearing, defendants moved for judgment on the pleadings as to Count II, asserting a claim by the Fraternal Order of Police Fort Pitt Lodge No. 1(FOP), and Count III, asserting a claim by Councilman Hertzberg. Following the hearing, common pleas concluded that the station's closure imposed no immediate and irreparable harm, plaintiffs' interests in preventing the closure did not outweigh the risk of harm to the City at large if the court interfered with the plan for reorganizing police services, and the likelihood of success on the merits of the claim appeared questionable. In addition, common pleas concluded that the FOP and Councilman Hertzberg had no standing to challenge the closing of the station and, therefore, the court granted judgment on the pleadings as to Counts II and III. Thereafter, WP Partnership, WE–HAV and Hertzberg filed the present appeal, challenging the denial of the preliminary objection and the dismissal of Count III.

The order from which this appeal is taken encompasses a ruling on the preliminary injunction, which is immediately appealable under Pa. R.A.P. 311(a)(4),[4] and

that the municipality must maintain the same level of municipal programs and services provided within the NID before NID designation as after NID designation. 73 P.S. § 835(C)(3)(ii) and (iv).

4. Rule 311(a)(4) provides:

(a) General Rule. An appeal may be taken as of right and without reference to Pa. R.A.P. 341(c) [concerning final orders] from ....

(4) Injunctions. An order granting, continuing, modifying, refusing or dissolving injunctions, except for injunctions pursuant to Sections 3323(f) and 3505(a) of the Divorce Code, 23 Pa.C.S. 3323(f) and 3505(a). A decree nisi granting or denying an injunction is not appealable as of right under this rule, unless the decree nisi (i) grants an injunction effective upon entry of a decree nisi or (ii) dissolves a previously granted preliminary injunction effective upon the entry of a decree nisi.

a judgment on some but not all Counts of the complaint, which does not satisfy the criteria defining a final and appealable order under Pa. R.A.P. 341(b). As such, the order presents an initial question as to its appealability, and because the answer to this question goes to our jurisdiction, we may raise the issue *sua sponte. Contact II, Inc. v. State Horse Racing Comm'n,* 664 A.2d 181, 183 (Pa.Cmwlth.1995). Initially, we note that no sound rationale justifies construing the disposition of Counts II and III as final and appealable simply because common pleas dismissed those Counts in the same order in which it denied the preliminary injunction. The single order on appeal here amounts to two separate decisions, the appealability of which we would determine separately had each decision been the subject of a separate order.[5]

Rule 341(b) defines a "final order," as any order that disposes of all claims and of all parties; or that is expressly defined as a final order by statute; or that is entered as a final order pursuant to subdivision (c) of the Rule. Subdivision (c) provides a mechanism for the trial court to deem as final an order disposing of fewer than all claims or all parties if an immediate appeal would facilitate resolution of the entire case. The present entry of partial judgment on the pleadings does not qualify as a final order under any statutory provision and a determination of finality by common pleas under subsection (c) was neither sought nor warranted. Consequently, we consider only the first criteria calling for a ruling that disposes of all claims against all parties. With respect to that criteria, we note that the Supreme Court established that definition of finality in 1992, when it rescinded the former Rule 341 and adopted the current version in order to establish a bright line definition and to eliminate the case-by-case analysis that had evolved prior to that time, when common law doctrines defined what constituted a "final order."[6] *Contact II, Inc.* at 183. It is now well established that an order dismissing an action as to fewer than all plaintiffs is not a final order. See *Id.*. *See also* Note accompanying Pa. R.A.P. 341.[7] For this reason, we hold that, inso-

Pa. R.A.P. 311(a)(4).

5. We note that each of the decisions should have been set forth in a separate document as required under Pa R.A.P. 301(b). However, the failure to do so is a waivable defect that does not impair our jurisdiction. *See Parents Against Abuse v. Williamsport Area Sch. Dist.,* 140 Pa.Cmwlth. 559, 594 A.2d 796, 800 (1991).

6. Prior to the adoption of the current version of Rule 341, the Rule provided as follows:

   **Final Orders Generally**

   **(a) General Rule.** Except as prescribed in Subdivisions (b) and (c) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

   **(b) Superior Court and Commonwealth Court orders.** Except as prescribed by Rule 1101 (appeals as of right from Commonwealth Court) no appeal may be taken as of right from any final order of the Superior Court or of the Commonwealth Court.

   **(c) Criminal orders.** An appeal may be taken by the Commonwealth from any final order in a criminal matter only in the circumstances provided by law.

   Pa. R.A.P. 341 (Purdons 1990). The common law regarding what constituted a final order under the pre–1992 version of Rule 341 is set forth in *Praisner v. Stocker,* 313 Pa.Super. 332, 459 A.2d 1255 (1983) and the problems arising in its application are well illustrated in *Motheral v. Burkhart,* 400 Pa.Super. 408, 583 A.2d 1180 (1990); *Trackers Raceway v. Comstock Agency,* 400 Pa.Super. 432, 583 A.2d 1193 (1990) and *Garofolo v. Shah,* 400 Pa.Super. 456, 583 A.2d 1205 (1990).

7. The Note following Rule 341 states, in pertinent part:

   The 1992 amendment generally eliminates appeals as of right under Rule 341 from orders not ending the litigation as to

far as common pleas granted judgment on the pleadings in favor of defendants as to Counts II and III and dismissed those Counts but left for later litigation the claim in Count I asserted by WP Partnership, that portion of the order is not final.[8]

Our conclusion in this respect is not affected by our Supreme Court's decision in *Wynnewood Development, Inc. v. Bank and Trust Co.*, 551 Pa. 552, 711 A.2d 1003 (1998). In *Wynnewood*, the Court ruled that the dismissal of the portion of a complaint requesting injunctive relief, but leaving for trial a separate request for compensatory damages, constitutes an interlocutory order appealable as of right pursuant to Pa. R.A.P. 311(a)(4). The Court reasoned that when common pleas, in an action for the breach of a real estate sales agreement, granted partial summary judgment in favor of the defendant as to all claims seeking injunctive relief, the court had denied an injunction. The same conclusion cannot apply in the present case because all three Counts of the complaint seek the same injunctive relief and so the continued viability of Count I preserves a claim for the same injunctive relief requested in the dismissed Counts. Hence, we cannot conclude that common pleas' order dismissing Counts II and III effects a denial of permanent injunctive relief so as to trigger the allowance of an interlocutory appeal under Rule 311(a)(4).[9]

all claims and as to all parties. Formerly, there was case law that orders not ending the litigation as to all claims and all parties are final orders if such orders have the practical consequence of putting a litigant out of court.

....

The following is a partial list of orders previously interpreted by the courts as appealable as final orders under Rule 341 that are no longer appealable as of right unless the trial court or administrative agency makes an express determination that an immediate appeal would facilitate resolution of the entire case and expressly enters a final order pursuant to Rule 341(c):

....

(4) An order dismissing an action as to less than all plaintiffs or as to less than all defendants but leaving pending the action as to other plaintiffs and other defendants; ...

8. In response to our order directing the parties to address the appealability of the dismissal of Count III, Councilman Hertzberg contended at oral argument that the collateral order doctrine rendered the dismissal of that Count appealable under Pa. R.A.P. 313. Rule 313 permits an appeal of right from a collateral order and defines such an order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Our Supreme Court recently said that:

> [T]he collateral order doctrine is a specialized, practical application of the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

*Melvin v. Doe*, —— Pa. ——, ——, 836 A.2d 42, 46–47 (2003). In the present case, the dismissal of Hertzberg's claim on what amounts to a demurrer premised on his lack of standing is inextricably intertwined with the ultimate merits of his claim. In addition, it is apparent that Hertzberg's ability to challenge common pleas' conclusion that he lacks standing will not be lost if review is postponed until a final judgment. For these reasons, the dismissal of Count III is not a collateral order appealable under Rule 313.

9. It may be noted that not all orders granting or denying injunctive relief are immediately appealable. Generally, an appeal may not be taken from a decree nisi granting or denying a permanent injunction. See Pa. R.A.P. 311(a)(4) and the Note following the Rule. Inasmuch as a decree nisi, filed pursuant to Pa. R.C.P. No. 1517, may be affirmed, modified or changed depending on the resolution

However, common pleas' denial of the request for a preliminary injunction is appealable as of right under Rule 311(a)(4). *Thermo–Guard, Inc. v. Cochran,* 408 Pa.Super. 54, 596 A.2d 188, 191, n. 6 (1991). In reviewing common pleas decision to deny preliminary injunctive relief, we apply a highly deferential standard of review that looks to whether "the record reveals that 'any apparently reasonable grounds' support the trial court's disposition of the preliminary injunction request." *Summit Towne Centre, Inc. v. Shoe Show,* 573 Pa. 637, 646, 828 A.2d 995, 1001 (2003). "In ruling on a preliminary injunction request, a trial court has 'apparently reasonable grounds' for its denial of relief where it properly finds that any one of the following 'essential prerequisites' for a preliminary injunction is not satisfied." *Id.* Our Supreme Court has set forth the essential prerequisites, as follows:

> First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Id.* at 647, 828 A.2d at 1001 (citations omitted). In the present case, common pleas deemed the evidence insufficient to establish these prerequisites and our review discloses no error in that assessment.

With respect to the first requirement, common pleas, after summarizing the testimony by WE–HAV's witnesses, opined that:

> WE–HAV generally asserts immediate and irreparable harm in the nature of increased risk of crime as a result of a decrease in police protection associated with the closure of the Zone 4 station. However, this court is unable to conclude that the evidence presented to demonstrate the alleged immediate and irreparable harm asserted by WE–HAV was anything other than speculative.... [T]he plaintiffs did not offer any direct or empirical evidence of the actual affect [sic] of the closure of the Zone 4 station upon the level of police services generally in the community.... This court does not intend to appear dismissive of the valid concerns of the citizens of the affected West End neighborhoods; however, the evidence and testimony presented to this court, while clearly representing the heartfelt beliefs of the witnesses, and while quite likely

of a motion for post-trial relief filed under Pa. R.C.P. 227.1(a), appeal must wait for the entry of a final decree. *See Den–Tal–Ez, Inc. v. Siemens Capital Corp.,* 389 Pa.Super. 219, 566 A.2d 1214, 1217, n. 1 (1989). Rule of Appellate Procedure 311(a)(4) recognizes two exceptions to the non-appealability of a decree nisi—if common pleas' order has the immediate effect of changing the status quo by directing permanent injunctive relief or striking a previously granted preliminary injunction upon entry of the decree nisi.

reflective of the concerns of many other citizens of the West End neighborhoods, simply does not in this court's judgment, establish immediate and irreparable harm.

*West Pittsburgh Partnership,* common pleas op. at 7, 9, 10–11. WE–HAV now argues that the decreased "police presence" resulting from closure of the station violates the statutory mandate to maintain services and, as a violation of the statute, constitutes per se an irreparable harm. Inasmuch as we cannot logically equate a subjective perception of decreased "police presence" with a failure to maintain police services as required by Section 5(C)(3)(iv) of the Act, we perceive no merit in WE–HAV's argument. Having failed to satisfy the first requirement, WE–HAV cannot prevail in its request for a preliminary injunction and further analysis of the remaining elements is unnecessary.

Nevertheless, common pleas determined: that enjoining the closure of the station would be detrimental to the Police Department's ability to reorganize in a manner that maintains adequate service throughout the City, thereby presenting an adverse public impact; and, that WE–HAV failed to establish a clear likelihood that it would prevail on the merits. These factors present additional reasonable grounds for the denial of the requested injunction.

Based on common pleas' sound analysis, we affirm the denial of a preliminary injunction.

### *ORDER*

AND NOW, this 8th day of January, 2004, the order of the Court of Common Pleas of Allegheny County denying a preliminary injunction in the above captioned matter is hereby AFFIRMED. The appeal from the order of Common Pleas dismissing Count III of the complaint is hereby QUASHED.