J-A19028-15

2015 PA Super 185

| CHRIS PALUTI AND AMBER PALUTI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| CUMBERLAND COAL LP AND EMERALD COAL LP | |
| Appellee | No. 1885 WDA 2014 |

Appeal from the Order Entered October 15, 2014
In the Court of Common Pleas of Greene County
Civil Division at No(s): AD 416-2014

BEFORE:  BENDER, P.J.E., JENKINS, J., and MUSMANNO, J.

OPINION BY JENKINS, J.:                    **FILED SEPTEMBER 4, 2015**

Chris and Amber Paluti ("the Palutis") filed a complaint seeking, *inter alia*, a declaratory judgment that Cumberland Coal LP and Emerald Coal LP (collectively "Cumberland") have no right to construct a new mine underneath the Palutis' surface estate. Cumberland filed preliminary objections in the form of demurrers to Count II (the declaratory judgment claim) and Count III (a nuisance claim), but Cumberland did not file a preliminary objection to Count I.  The trial court sustained Cumberland's preliminary objections, dismissed Counts II and III with leave for the Palutis to file an amended complaint, and stayed proceedings on Count I.

The Palutis have appealed this order.  All parties, including Cumberland, contend that the order is appealable.  The trial court disagreed, and we disagree as well.  The Palutis sought declaratory judgment on the

1

ground that Cumberland lacks the right to construct a new mine under deeds from 1900 and 1903 that conveyed mining rights to Cumberland's predecessor in interest. The trial court's order is not appealable as a final order under Pa.R.A.P. 341, because (1) it only addressed Cumberland's rights under the 1903 deed but not under the 1900 deed, and (2) it granted the Palutis leave to file an amended complaint. Nor, for the reasons articulated below, is this order appealable under Pa.R.A.P. 311(a)(4) as an interlocutory order denying injunctive relief. For these reasons, we quash the Palutis' appeal.

On June 8, 1992, the Palutis, by general warranty deed, purchased three tracts of real property in Whiteley Township and acquired all rights to the tracts' surface estates and all subsurface mineral rights not reserved to third parties through prior severance deeds in the chain of title. Complaint, exhibit I. Two such reservations are within the 1900 and 1903 severance deeds. Both reservations relate to a single seam of coal (the "Pittsburgh seam") beneath the Palutis' surface estate.[1] *Id*., exhibits G, H.

The Pittsburgh seam of coal lies both underneath and beyond the Palutis' surface estate. The portion of the Pittsburgh seam beneath the Palutis' property was fully mined during the past century. Cumberland claims to be the successor in interest under the 1900 and 1903 deeds to the

_____

[1] The Palutis own subsurface mineral rights to at least one other seam of coal, the "Sewickley seam".

portion of the Pittsburgh seam underneath the Palutis' property. Complaint, ¶¶ 36-43. Cumberland also owns part of the Pittsburgh seam outside the Palutis' property. *Id*.

Cumberland asserts the right under the 1900 and 1903 deeds to construct a slope mine ("the new mine") that will begin at a portal outside the Palutis' property and tunnel through the Palutis' subsurface strata without reaching any part of the Pittsburgh seam beneath the Palutis' surface estate. Complaint, ¶¶ 36-43. The new mine will access the Pittsburgh seam beneath third party estates unrelated to the 1900 or 1903 deeds. *Id*. Cumberland will use this mine only to transport coal from third party sources to the portal outside the Palutis' property. *Id*.

In the 1900 deed, the Palutis' predecessors in interest, William Orndoff et al., granted a mining right to the "Pittsburgh or River"[2] seam of coal to the grantee, William J. Kyle, Trustee. Complaint, exhibit G. The 1900 deed expressly required the grantee to conduct all subsurface transportation through the passage created by excavation of the Pittsburgh seam:

> With the rights to the said party of the second part, his heirs and assigns to mine and remove all said coal without being required to provide or leave support for the overlying strata or surface and without being liable for any injury to the same or to anything therein or thereon by reason thereof, of by the manufacture of this or other coal into coke and with all reasonable privileges for ventilation,

---

[2] The parties agree that the River seam is equivalent to the Pittsburgh seam.

> pumping and draining the mines *and the right to keep and maintain roads and ways through said mine forever* for the transportation of said coal and of coal, minerals and other thing…

*Id*. (emphasis added).  Therefore, the 1900 deed limited the grantee to transportation through the mine and prohibited excavation of new passages in other subsurface strata.

The 1903 Deed concerned a different tract of land than the 1900 deed. In this deed, George B. Orndoff et al. (the Palutis' predecessors in interest), granted a mining right in the "Pittsburgh or River" seam of coal to the grantee, William K. Hatfield.  Complaint, exhibit H.  This deed contained different language than the 1900 deed concerning transportation of mined coal from third party sources:

> The party of the second part, his heirs and assigns shall have the right to mine and carry away all of said coal with all the mining rights and privileges necessary or convenient with mining and removing the same without, being required to provide for the support of the overlaying strata and without liabilities for injury to the said surface or to anything therein or thereon by reason of the mining and removing of said coal or to the manufacture of the same or other coal into coke or other products at such places as may be selected by said party second party, his heirs or assigns, *together with the right of mining and removing under said described premises other coal* or matter belonging to or that may hereafter belong to the said second party his heirs and assigns.

*Id.* (emphasis added).

The Palutis assert that a vacant passage remains intact in the Pittsburgh seam under their property from mining activities during the past century. The Palutis do not challenge Cumberland's right to transport coal, machinery and materials through this existing passage. Instead, they oppose construction of a new passage under their surface estate through strata outside the Pittsburgh seam for transportation of coal mined from unrelated third party properties.

On June 10, 2014, the Palutis filed a three count complaint against Cumberland. Count I, a statutory action under 53 P.S. § 10617, alleged that construction of the new mine constitutes a violation of Whiteley Township zoning ordinances. Count II sought a declaratory judgment that Cumberland has no right under the 1900 or 1903 deeds to construct the new mine. Count III alleged that Cumberland's alleged zoning violations and proposal to construct the new mine constitute a private nuisance. The prayers for relief in each count demanded that the court "prevent or restrain" Cumberland from constructing the new mine.

Cumberland filed preliminary objections to Counts II and III of the complaint. Cumberland did not address the 1900 deed in its preliminary objections to Count II; Cumberland only claimed the right to construct the new mine under the 1903 deed. Similarly, the Palutis' response did not address the 1900 deed.

On October 15, 2014, the trial court sustained Cumberland's preliminary objections and dismissed Counts II and III, but it granted the Palutis leave to file an amended complaint. The court stayed disposition of Count I pending disposition of a separate case on its miscellaneous docket.

Noting that Cumberland's preliminary objections and the Palutis' response did not discuss the 1900 deed, the court limited its analysis to whether Cumberland had the right to construct the new mine under the 1903 deed. Memorandum and Order, 10/15/14, p. 3. The court wrote:

> [W]e turn to the operative language in the 1903 deed. Does the grant of 'the right of mining and removing under said described premises other coal or matter belonging... to said second party' convey the right to carve a tunnel under [the Palutis'] land but not in the Pittsburgh seam of coal? In our opinion it does. The obvious question is the definition of premises. Are the premises in this case the 111.443 acres of surface which the Orndoff grantors presumably owned when they severed the Pittsburgh coal, or are the premises the Pittsburgh coal itself? What did the parties to the severance deed intend?
>
> If 'said described premises' means the Pittsburgh seam of coal, the grant of removing all other coal or matter 'under said described premises', gives the coal owners the right to tunnel below the Pittsburgh coal, which makes no sense. No one would bargain for that right. Obviously, the 'premises' refers to the surface and here William Hatfield purchased the right to mine coal and other matter from other lands beyond the boundaries of [the Palutis'] predecessors' land and remove it under the land now owned by [the Palutis], not necessarily within the Pittsburgh coal seam.
>
> To the extent [the Palutis] rely on the language of the 1903 deed, they have failed to state a cause of

action. The construction and maintenance of a slope shaft then traverses their land at some elevation above the Pittsburgh seam of coal and below the surface right invades no property right that [the Palutis] still possess.

*Id*. at 5-6.

On October 24, 2014, the Palutis filed a motion for reconsideration objecting to the court's failure to analyze the 1900 deed:

> [T]he Court failed to account for the language of the 1900 Deed. As a fact that it controls both [the Palutis'] real property rights and [Cumberland's] mineral/access rights, it is a critical element of [the Palutis'] claim. [Cumberland] only raised demurrer as to the 1903 Deed. As such, [the Palutis] only addressed the issues raised by [Cumberland] instead of voluntarily expanding the scope of [Cumberland's] objections. The factual assumption by the Court that the 1900 Deed is of no consequence is premature. At this stage, there is no record, or available analysis, providing that the new mine will only traverse through portions of [the Palutis'] subsurface property controlled by the 1903 Deed. Accordingly, the assumption that the 1900 Deed is immaterial mistakenly overlooks a large portion of [the Palutis'] claim.

Palutis' Motion For Reconsideration, 10/24/14, p. 4. The court did not act on this motion.

On November 10, 2014, Cumberland filed an application for determination of finality under Pa.R.A.P. 341(c).[3] Cumberland

_____

[3] Rule 341(c) provides:

*(Footnote Continued Next Page)*

- 7 -

acknowledged that the October 15, 2014 order "is not a final order" due to "the pendency of Count I" but argued that an immediate appeal would facilitate resolution of the entire case.[4]  Application, p. 3.

On November 13, 2014, the Palutis appealed to this Court from the October 15, 2014 order.

On December 26, 2014, the trial court issued a "Memorandum to Record" opining that the October 15, 2014 order was interlocutory:

> [The Palutis'] land is made up of parts of two tracts from which the Pittsburgh coal has been severed by two deeds, one in 1900 and the other in 1903. The complaint does not specify whether [Cumberland's] shaft or proposed shaft will pierce the part of [the Palutis'] land where the coal was severed by the 1900 deed or the part where the coal was severed by

*(Footnote Continued)* ──────────────

> [W]hen more than one claim for relief is presented in an action … the trial court … may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case … In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order.

*Id.*  The trial court "is required to act on an application for a determination of finality … within 30 days of entry of the order."  Pa.R.A.P. 341(c)(1). "Unless the trial court … acts on the application within 30 days of entry of the order, the trial court … shall no longer consider the application and it shall be deemed denied."  Pa.R.A.P. 341(c)(3).

[4] The application was denied by operation of law because the court did not act on it within thirty days after the October 15, 2014 order.  *See* n. 3, *supra*.

the 1903 deed, or both. Our order of October 15, 2014, held that the mining rights language in the 1903 deed permitted the coal owners to do what the complaint says they are doing or plan to do. We held therefore the complaint stated no cause of action if [Cumberland's] works impacted only the land described in the 1903 deed. We made no such finding with regard to the rights set forth in the 1900 deed. Unless all of [Cumberland's] activities are within the land bounded by the 1903 deed, and the complaint does not say that, [the Palutis] are not out of Court on Count II.

*Id.* at 2.

On December 30, 2014, this Court issued a rule upon the Palutis to show cause why this appeal should not be quashed as interlocutory. The Palutis responded with a letter brief insisting that the October 15, 2014 order was immediately appealable. Similarly, Cumberland filed a letter brief contending that the order was either a final, appealable order or an appealable interlocutory order -- thus contradicting its argument below that the October 15, 2014 order "is not a final order."

On January 15, 2015, this Court permitted the appeal to proceed while advising that the panel assigned to this case could revisit the quashal issue. The parties have filed briefs renewing their arguments that we enjoy jurisdiction.

"Generally, subject matter jurisdiction has been defined as the court's power to hear cases of the class to which the case at issue belongs." *Verholek v. Verholek*, 741 A.2d 792, 798 (Pa.Super.1999). "[I]t is well-settled that the question of subject matter jurisdiction may be raised at any

time, by any party, or by the court *sua sponte.*" ***B.J.D. v. D.L.C.,*** 19 A.3d 1081, 1082 (Pa.Super.2011). Our standard of review is *de novo,* and our scope of review is plenary. ***Id****.*

Both the Palutis and Cumberland posit that this Court has subject matter jurisdiction because the October 15, 2014 order fully resolved the Palutis' declaratory judgment claim. We conclude, however, that the order is neither a final, appealable order under Pa.R.A.P. 341 or an appealable interlocutory order under Pa.R.A.P. 311.

We first consider whether the order is final as it relates to Count II of the complaint, the action for declaratory judgment. A final order

> is any order that:
>
> (1) disposes of all claims and of all parties; or
> (2) is expressly defined as a final order by statute; or
> (3) is entered as a final order pursuant to [an application for determination of finality under Rule 341(c)].

Pa.R.A.P. 341(b). An appeal may be taken as of right from any final order. Pa.R.A.P. 341(a).

In certain circumstances, an order deciding a declaratory judgment claim constitutes a "final order by statute," even when other claims remain undecided. Pa.R.A.P. 341(b)(2). Section 7532 of the Pennsylvania Declaratory Judgments Act, entitled "General Scope Of Declaratory Remedy," provides:

- 10 -

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations *shall have the force and effect of a final judgment or decree*.

42 Pa.C.S. § 7532 (emphasis added). Our Supreme Court has made clear, however, that an order deciding a declaratory judgment claim is final and appealable under section 7532 if, and only if, it fully resolves the declaratory judgment claim. ***United States Organizations for Bankruptcy Alternatives, Inc. v. Department of Banking***, 26 A.3d 474, 479-80 (Pa.2011). A declaratory judgment order which merely narrows the dispute instead of resolving it is not final or appealable. ***Id***. (order granting in part and denying in part declaratory judgment petition challenging constitutionality of Debt Management Services Act was not final, appealable order; petition challenged Act in its entirety, but court struck only two provisions of Act, did not address several of petitioners' arguments, and did not decide whether petitioners were entitled to full relief requested); ***Pennsylvania Bankers Ass 'n v. Pennsylvania Dept. of Banking***, 948 A.2d 790, 796-97 (Pa.2008) (order sustaining preliminary objections to some, but not all, declaratory judgment claims challenging constitutionality of statute merely narrowed scope of claims and did not constitute final

order, because plaintiffs may still be able to obtain relief through remaining declaratory judgment claims).

The trial court correctly observed that its October 15, 2014 order is not final and appealable as it relates to Count II. The order expressly permits the Palutis to amend the complaint, so the Palutis "are not out of court on [their declaratory judgment action]." Memorandum to Record, p. 2. Moreover, the order addresses the parties' rights under the 1903 deed but not under the 1900 deed, so it merely narrows the dispute instead of resolving it. ***Bankruptcy Alternatives, Pennsylvania Bankers Ass'n, supra***. The 1900 deed is still a potential avenue for declaratory relief, and this matter is for the trial court to resolve in the first instance. In short, the order is not appealable under section 7532 and therefore is not a final order under Pa.R.A.P. 341(b)(2).

Nor is the order appealable under Rule 341(b)(1), because it does not dispose of all claims: the court did not address the 1900 deed in the course of deciding Cumberland's preliminary objections, the court granted the Palutis leave to amend their complaint, and the court never ruled on Count I at all. Finally, the order is not appealable under Rule 341(b)(3), because Cumberland's application for determination of finality was denied by operation of law.

Turning to the private nuisance claim in Count III, the order is not final under Rule 341(b)(1) and (b)(3) for the reasons given with regard to Count

- 12 -

II. Nor is the order final under Rule 341(b)(2), because no statute designates an order disposing of a private nuisance action as "final".

Perhaps anticipating that the order is not final, Cumberland makes the alternative argument that the order is appealable under Pa.R.A.P. 311(a)(4), which permits interlocutory appeals as of right from "an order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction."[5] We disagree, based on the Commonwealth Court's persuasive logic in *West Pittsburgh Partnership ex rel. WEHAV Governing Com'n v. McNeilly*, 840 A.2d 498 (Pa.Cmwlth.2004). All three counts of the complaint in *McNeilly* sought the same injunctive relief: a decree prohibiting closure of a police station. The trial court entered judgment on the pleadings against the plaintiffs on

_____

[5] There are two exceptions to Rule 311(a)(4). An injunction order is not appealable

> when it is entered:
>
> (i)     pursuant to Section 3323(f) or 3505(a) of the Divorce Code, 23 Pa. C.S. §§ 3323(f), 3505(a); or
> (ii)    after a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

*Id*. Neither exception is relevant here.

Counts II and III of the complaint while reserving decision on Count I. The

Commonwealth Court quashed the plaintiffs' appeal relating to Counts II and

III, reasoning:

> [A]ll three Counts of the complaint seek the same injunctive relief[,] and so the continued viability of Count I preserves a claim for the same injunctive relief requested in the dismissed Counts. Hence, we cannot conclude that common pleas' order dismissing Counts II and III effects a denial of permanent injunctive relief so as to trigger the allowance of an interlocutory appeal under Rule 311(a)(4).

*Id*., 840 A.2d at 504.

Here, all three counts of the Palutis' complaint seek the same

injunctive relief, a decree "prevent[ing] or restrain[ing]" Cumberland from

constructing the new mine. Dismissal of Counts II and III of the complaint

will not prevent the Palutis from pursuing identical injunctive relief in Count

I. Indeed, the Palutis can still pursue injunctive relief on Counts II and III,

because the trial court dismissed these counts with leave to amend. In

short, the October 15, 2014 order "[does not] effect[] a denial of permanent

injunctive relief so as to trigger the allowance of an interlocutory appeal

under Rule 311(a)(4)." *McNeilly*, 840 A.2d at 504.

For these reasons, the October 15, 2014 order is neither a final,

appealable order under Pa.R.A.P. 341 nor an appealable interlocutory order

under Pa.R.A.P. 311. Although the parties urge us to exercise jurisdiction

over this appeal and have obviously devoted considerable time and effort to

their briefs, no rule authorizes us at this juncture to decide this appeal on the merits.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2015