**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF HAZLETON, Appellant,**

v.

**OFFICE OF the STATE TREASURER, UNCLAIMED PROPERTY REVIEW COMMITTEE, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 26, 1995.
Decided Dec. 29, 1995.

Thomas L. Kennedy, Hazleton, for First Federal.

Aaron B. Kahn, Washington, DC, Gary L. Goldberg, Pittsburgh, for Amicus—Office of Thrift Supervision.

Michael W. Arpey, Saratoga Springs, NY, Sonia M. Walwyn, Harrisburg, for State Treasurer.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal, by allowance, from an order of the Commonwealth Court which affirmed an order of the Unclaimed Property Review Committee (Committee) sustaining findings of the Office of State Treasurer (Treasurer) directing the appellant, First Federal Savings and Loan Association of Hazleton (First Federal), to remit to the Commonwealth certain property determined to be abandoned and unclaimed.

The Unclaimed Property Law, 72 P.S. § 1301.2, provides that certain abandoned and unclaimed property is subject to the custody and control of the Commonwealth. It specifies that such property includes:

1. Any demand, saving or matured time deposit in a financial institution ... excluding any charges that may lawfully be withheld, unless within the preceding seven (7) years [there has been activity in the account]. . . .

2. A deposit under clause 1 shall include any interest or dividend which the financial institution would pay to the owner upon claim therefor. The charges which may be excluded hereunder shall not include any charge due to inactivity imposed, directly or indirectly, after December 31, 1981 unless there is a valid and enforceable written contract between the financial institution and the owner of the deposit pursuant to which the financial institution may impose said charge.

72 P.S. § 1301.3.

An audit of First Federal, covering records for the period 1961 through 1985, was conducted by the Treasurer for the purpose of discovering unclaimed and abandoned property. See 72 P.S. § 1301.23 (audits). Identified as such property were various certificates of deposit and savings accounts. First Federal agreed that these constituted property of which the Commonwealth was entitled to take custody. However, First Federal challenged findings that certain additional funds should be remitted to the Commonwealth. These consisted of: passbook interest due on accounts not receiving interest as a result of changes in minimum balance requirements, minimum balance and dormant account charges deducted from savings accounts, and passbook interest due on deducted minimum balance and dormant account charges.

The minimum balance and dormant account policies in question were instituted by First Federal in 1987.[1] Accounts affected were already in existence before the policies were adopted. The Treasurer concluded that First Federal's actions were not authorized by the initial deposit agreements and that the agreements had never been modified, in accordance with state contract law, to authorize the same.

■ It is well established that the legal relationship between a financial institution and its depositors is based on contract, and that the contract terms are contained in the signature cards and deposit agreements. See *Cilvik Estate*, 439 Pa. 522, 525, 267 A.2d 836, 838 (1970). First Federal concedes that the charges in question were not imposed under terms of the contracts with its depositors. Further, no bilateral modifications of the contracts were ever made to authorize the charges. First Federal simply decided to generate more revenue for itself by imposing the charges, and attempted to change contract terms without consent of the depositors.

■ First Federal contends that the payment of interest and imposition of dormant

1. A service charge of $2.00 per month was imposed on accounts having less than a $100.00 balance. A charge of $5.00 per month was levied on dormant accounts, i.e., accounts in which

there had been no activity for three years. In addition, interest payments on savings accounts having balances less than $100.00 were ceased.

account and minimum balance charges are governed by federal law, and that state authorities are preempted from regulating such matters. In particular, First Federal argues that as a federally chartered savings and loan association it is subject to the exclusive control of the Federal Home Loan Bank Board (Board), in accordance with regulations promulgated under the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 et seq.[2]

Regulations in effect during the audit period were expressly "promulgated pursuant to the plenary and exclusive authority of the Board to *regulate all aspects of the operations* of Federal associations...." 12 C.F.R. § 545.2 (1985) (emphasis added). The regulations specified that the "exercise of the Board's authority is preemptive of any state law purporting to address the subject of the *operations* of a Federal association." *Id.* (emphasis added). In addition, 12 C.F.R. § 545.11 (1985) provided:

> Pursuant to 12 U.S.C. § 1464(b)(1)(A)–(b)(1)(B), a Federal association may issue insured accounts as defined in § 561.3 of this chapter in the form of demand deposit accounts and savings accounts for indefinite or fixed terms ("certificate accounts"), in the form of shares or deposits. An *association may* establish classes of accounts and *specify terms and conditions for such accounts.*

(Emphasis added).

First Federal asserts that if it is required to remit to the Commonwealth the minimum balance and dormant account service charges in question, and interest thereon, its operations are in effect being regulated by the Commonwealth in contravention of federal preemption. The Treasurer responds that there has been no showing that the contractual rights of depositors are within the scope of what has been preempted. We agree.

■ In *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), the Supreme Court of the United States set forth factors which determine whether state law is preempted by federal law. Preemption occurs, of course, where the intention to preempt has been expressly declared by Congress. In addition, an implied intent to preempt is found where a federal legislative scheme is so pervasive that it raises a reasonable inference that Congress left no room for a state to supplement it. Even where Congress has not completely displaced state regulation of a subject, state law is preempted to the extent that it actually conflicts with federal law, i.e., where compliance with both federal and state laws is an impossibility. *Id.* at 153, 102 S.Ct. at 3022, 73 L.Ed.2d at 675.

■ Federal regulations have no less of a preemptive effect than federal statutes. *Id.* "Congress expressly contemplated, and approved, the Board's promulgation of regulations superseding state law." *Id.* at 162, 102 S.Ct. at 3026, 73 L.Ed.2d at 680. In 12 C.F.R. § 545.2, supra, the states were expressly preempted from regulating the *operations* of federal savings associations. In 12 C.F.R. § 545.11, supra, federal savings associations were authorized to specify terms and conditions for savings accounts. Requiring First Federal to comply with state law requirements as to deposit agreements, and modifications thereto, involves no attempt to regulate the operations of savings associations. Nor does it prevent the associations from specifying terms and conditions for accounts. It merely assures that the contractual rights of depositors are protected.

Nothing express or implied in the regulatory scheme reveals a congressional intent that federal savings associations should be able to impose service charges on their customers without meeting the requirements of state contract law. Clearly, too, it is possible for savings associations to comply with both federal and state law in this regard. We conclude, therefore, that state contract law requirements have not been preempted. The Treasurer acted properly in enforcing such requirements against First Federal. The order of the Commonwealth Court upholding

---

2. The Home Owner's Loan Act of 1933 was amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1462a, to place the regulation of federal savings associations within the ambit of the Office of Thrift Supervision.

the Treasurer's actions must, therefore, be affirmed.

Order affirmed.

NIX, C.J., concurs in the result.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).