J-A06041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT W. VANDERWENDE | |
| Appellant | No. 876 MDA 2015 |

Appeal from the Judgment of Sentence Entered December 17, 2014
In the Court of Common Pleas of Lebanon County
Criminal Division at No: CP-38-CR-0000002-2013

BEFORE:    LAZARUS, STABILE, and DUBOW, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED SEPTEMBER 13, 2016**

Appellant Robert W. Vanderwende appeals from the judgment of sentence entered by the Court of Common Pleas of Lebanon County on December 17, 2014, sentencing him to, *inter alia*, nine to twenty-three months' incarceration.  For the reasons set forth below, we affirm.

The present case is before us after having followed a convoluted history.  On October 18, 2012, Detective Michael Dipalo of the Lebanon County Detectives Bureau filed a criminal complaint against Appellant.  The complaint charged Appellant with theft by failure to make required disposition of funds, theft by unlawful taking or disposition, dealing in proceeds of unlawful activities, and two counts of theft by deception.[1]  The

_____

[1] 18 Pa.C.S.A. §§ 3927(a), 3921(a), 5111(a)(1), and 3922(a)(1),(3), respectively.

charges stemmed from Appellant's conduct while working for Umberger's of Fontana, a business that sells, *inter alia*, agricultural equipment. After holding the preliminary arraignment on November 5, 2012, the Magisterial District Court continued Appellant's preliminary hearing from November 14, 2012 until January 17, 2013.

The record indicates that the case remained beset by delays even after Appellant waived the preliminary hearing. From March to October of 2013, Appellant requested, and received, four continuances that postponed the beginning of trial until the December 2013 trial term. Although Appellant listed his case for trial on December 19, 2013, trial did not commence as scheduled. Instead, two new continuances initiated at the Commonwealth's behest suspended the proceedings until the May 5, 2014 trial term.

On March 13, 2014, during the postponement prompted by the Commonwealth, Appellant filed a Motion for Sanctions. The motion alleged that the Commonwealth had failed to preserve and produce evidence requested by Appellant. Specifically, Appellant maintained that the Commonwealth had reviewed a Department of Transportation logbook during its investigation but had returned the item to the victims without photocopying it. The logbook subsequently disappeared. The trial court, on March 26, 2014, denied Appellant's motion but prohibited the Commonwealth from using any testimony concerning the logbook during its case-in-chief.

On April 23, 2014, Appellant requested, and received, another continuance, further postponing trial until the June 2014 trial term. The trial court issued an additional continuance on May 28, 2014 and scheduled trial for the July 7, 2014 term. However, as the trial date approached, a witness for the Commonwealth filed a Motion for a Protective Order, seeking to be released from his subpoena due to a previously scheduled engagement. The trial court granted the motion and once again postponed the trial, this time until the August 4, 2014 term. Appellant thereafter filed a Motion to Amend Order in which he asked that the trial court rescind its order granting the protective order or, in the alternative, grant a continuance until the September 8, 2014 trial term. Although the court denied Appellant's motion, it nevertheless continued the case until the September 2014 term. The final continuance – the thirteenth of the case – took place on September 4, 2014 at the Commonwealth's request. Finally, after numerous delays, trial was set to begin on November 4, 2014.

Arguing that his speedy trial rights had been violated, Appellant filed a Motion to Dismiss on October 6, 2014. The hearing on the matter convened on October 22 whereupon the trial court denied Appellant's motion. Appellant swiftly filed a notice of appeal to this Court. We quashed the appeal on October 30, 2014.

Before trial began on November 4, 2014, the trial court first entertained a motion filed by MidAtlantic Farm Credit on behalf of one of its employees. The motion sought the nullification of a subpoena that Appellant

had issued directing a Mary Henry to testify and produce documents. Finding that service of the subpoena had been improper, the trial court released Ms. Henry from the subpoena but directed that MidAtlantic produce some of the requested documents. The final hurdle having been cleared, Appellant's case proceeded to trial. After two days of hearing testimony and seeing evidence, the jury found Appellant guilty of all charges.

On appeal, Appellant raises the following seven issues for our consideration:

> 1. Should the charges against [Appellant] have been dismissed with prejudice after the Commonwealth failed to adduce evidence or testimony to support its contention that certain time was excludable and other time should be excused?
>
> 2. Did the trial court lack jurisdiction to hold [Appellant's] trial when [Appellant] had filed an appeal to the Superior Court on a collateral order, which was quashed and the order quashing the appeal was still pending [before] the Supreme Court?
>
> 3. Should the trial court have required a subpoenaed party to appear at trial at [Appellant]'s request when the subpoenaed party's testimony was relevant and the subpoenaed party did not object to service of the subpoena?
>
> 4. Should the trial court have entered sanctions against the Commonwealth for failing to preserve and produce upon request a [Department of Transportation] log, which documented the alleged victim's employee transporting equipment [Appellant] was accused of stealing?
>
> 5. Should the trial court have granted [Appellant] a new trial when evidence was discovered immediately after trial[,] which shows the factual basis underlying the Commonwealth's expert witness's opinion had been manipulated by the alleged victim?
>
> 6. Was the verdict entered by the jury against the weight of the evidence produced at trial?

7. Should the trial court have granted [Appellant] a new trial because the jury was unduly influenced to produce a verdict because they were kept well after normal business hours?

Appellant's Brief at 8-9.

We first turn to whether the trial court erred by denying Appellant's motion to dismiss pursuant to Pa.R.Crim.P. 600 ("Rule 600"). Our standard of review is whether the trial court's decision to deny the motion was an abuse of discretion. *Commonwealth v. Thompson*, 136 A.3d 178, 182 (Pa. Super. 2016) (citation omitted). "An abuse of discretion," we have often observed, "is not a mere error in judgment, but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Commonwealth v. Hacker*, 959 A.2d 380, 392 (Pa. Super. 2008). We are also mindful that, in our review of the trial court's decision in this case, we may look no further than "the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court." *Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super. 2007) (quoting *Commonwealth v. Hunt*, 858 A.2d 1234, 1238-39 (Pa. Super. 2004)).

The purpose of Rule 600 is to "prevent unnecessary prosecutorial delay in bringing a defendant to trial." *Commonwealth v. Brock*, 61 A.3d 1015, 1021 (Pa. 2013). To that end, the rule, in pertinent part, provides the following:

[(A)](3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail,

shall commence no later than 365 days from the date on which the complaint is filed.

. . .

(B) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.[2]

Pa.R.Crim.P. 600(A)(3) (rescinded October 1, 2012, effective July 1, 2013).[3]

Therefore, a defendant may move to dismiss his or her charges if trial does not begin within the 365-day period specified in Rule 600(A)(3). ***Commonwealth v. Goldman***, 70 A.3d 874, 879 (Pa. Super. 2013).

In the present case, Appellant's trial began 746 days after the filing of the criminal complaint. However, the mere fact of such a delay does not necessarily entitle Appellant to the dismissal of his charges. ***Id.*** Indeed, "Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth." ***Ramos***, 936 A.2d at 1100; ***see also*** Pa.R.Crim.P. 600(C) (excluding various periods of delay from the 365-day period prescribed by Rule 600(A)(3)).

To determine whether dismissal is required under Rule 600, a court must first calculate the "mechanical run date," which is 365 days after the complaint was filed. Rule 600(C) addresses

_____

[2] Relevant to the present case, "trial commences when the trial judge determines that the parties are present and directs them to proceed to *voir dire* . . . or to some other such first step in the trial." Pa.R.Crim.P. 600 cmt.

[3] On October 1, 2012, our Supreme Court adopted a new version of Rule 600 that went into effect on July 1, 2013. ***Brock***, 61 A.3d at 1016 n. 2. Because the charges in this case were filed on October 18, 2012, we apply the former version of the rule.

situations where time can be excluded from the computation of the deadline. Case law also provides that a court must account for any "excludable time" and "excusable delay." Excludable time is delay that is attributable to the defendant or his counsel. Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

**Goldman**, 70 A.3d at 879 (internal citations omitted). Adding "excludable time" to the mechanical run date produces the "adjusted run date." **Ramos**, 936 A.2d at 1101. Similarly, the "final run date" is the adjusted run date combined with any periods of "excusable delay." **Id.** at 1103. "[T]he only occasion requiring dismissal is when the Commonwealth fails to commence trial within 365 days of the filing of the written complaint, taking into account all excludable time and excusable delay." **Goldman**, 70 A.3d 879-80.

The record indicates that Detective Dipalo filed the criminal complaint against Appellant on October 18, 2012. The mechanical run date was therefore October 18, 2013. With regard to "excludable time," we note that Appellant received multiple continuances during the pendency of his case. Indeed, Appellant conceded at the Rule 600 hearing that his first three continuances spanned a period of 274 days. N.T., Rule 600 Hearing, 10/22/14, at 4. Another two continuances, granted on April 23 and May 28, 2014, postponed trial by an additional 63 days.[4] Appellant received a final,

_____

[4] In his motion to dismiss, as well as in his brief to this Court, Appellant disputes whether the court issued the May 28, 2014 continuance at his direction. **See** Motion to Dismiss Pursuant to Rule 600, 10/3/14, at ¶¶ 15-
*(Footnote Continued Next Page)*

35-day continuance on July 23, 2014. In light of the delays caused by Appellant, the adjusted run date was October 27, 2014.

As indicated above, Appellant's trial did not begin until November 3, 2014, approximately one week after the adjusted run date. Yet, calculating the adjusted run date is but the second of a three-step inquiry. To determine the final run date of Appellant's case, we must take into account any periods of "excusable delay." *Goldman*, 70 A.3d at 879-80. Here, we need look no further than the 64-day continuance occasioned by the Magisterial District Judge ("MDJ") early in Appellant's case. At the Rule 600 hearing, the trial court asked Appellant whether those 64 days were "attributable to the Commonwealth." N.T., Rule 600 Hearing, 10/22/14, at 5. In response, Appellant conceded that the "court time" was not attributable to the Commonwealth. *Id.* In making such a statement, Appellant admitted that the time qualified as "excusable delay" for purposes of Rule 600.[5] It is clear that adding 64 days to the adjusted run date results

*(Footnote Continued)* _____

16, 26, 36, 38 ("Motion to Dismiss"); Appellant's Brief at 27. As explained in footnote 6, *infra*, omitting the delay due to the May 28 continuance does not change our resolution of Appellant's Rule 600 claim.

[5] On appeal, Appellant claims that the Commonwealth did not produce any evidence that it was duly diligent during the MDJ's 64-day continuance. Appellant's Brief at 23-25. Whatever the merits of this assertion, Appellant failed to raise it at the time of the Rule 600 hearing and cannot now advance the argument by including it in his appellate brief. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

in a final run date of December 30, 2014.[6] Appellant's trial date, therefore, was well within the parameters of Rule 600. Accordingly, we conclude that the trial court did not abuse its discretion by denying Appellant's motion to dismiss.

With his second issue, Appellant contends that the trial court lacked the jurisdiction necessary to proceed to trial in his case. *See* Appellant's 34-40. This is so, Appellant urges, because he filed an appeal on October 28, 2014 in which he challenged the trial court's disposition of his Rule 600 motion. *Id.* at 34-35. Addressing this same argument prior to the present appeal, the trial court concluded that the October 2014 appeal was from an interlocutory order and did not preclude the court from going forward with Appellant's case. Trial Court Opinion, 4/21/15, at 10-11. We agree.

"[S]ubject matter jurisdiction has been defined as the court's power to hear cases of the class to which the case at issue belongs." *Paluti v. Cumberland Coal LP*, 122 A.3d 418, 423 (Pa. Super. 2015) (citation omitted). When a party challenges a court's "power" to hear his or her case, our standard of review is *de novo* and our scope of review plenary. *Id.* Appellant accurately notes that an appeal typically deprives the lower court

---

[6] Excluding the time attributable to the May 28 continuance, Appellant calculated the adjusted run date as falling on September 19, 2014. *See* Motion to Dismiss, at ¶ 23. However, factoring in the "excusable delay" of 64 days produces a final run date of November 22, 2014. Appellant's trial began on November 3, 2014; thus, the trial court properly denied the motion to dismiss.

- 9 -

of jurisdiction. Appellant's Brief at 35 (citing Pa.R.A.P. 1701(a)). However, a trial court may "[p]roceed further in any matter in which a non-appealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review of the order." Pa.R.A.P. 1701(b)(6). The legitimacy of Appellant's trial therefore depends on whether the trial court's denial of the Rule 600 motion was an interlocutory order.[7]

Relying upon Pa.R.A.P. 313(b), Appellant contends that the trial court's denial of his Rule 600 motion was an appealable collateral order. *See* Appellant's Brief at 38-39. Notably absent from Appellant's analysis, however, is this Court's decision in *Commonwealth v. McPherson*, 533 A.2d 1060 (Pa. Super. 1987). Upon facts very similar to those found in the present case, we stated in *McPherson* that an order "refusing to dismiss a case on Rule [600] grounds" is interlocutory and non-appealable.[8] *McPherson*, 533 A.2d at 1062. Our Supreme Court has likewise held that an order denying a defendant's motion to dismiss pursuant to Rule 600 is

---

[7] Appellant acknowledges in his brief that the trial court's jurisdiction "hinges upon the status ascribed to the order appealed." Appellant's Brief at 37.

[8] At the time of our decision in *McPherson*, Pa.R.Crim.P. 1100 contained the substance of what is now Pa.R.Crim.P. 600. As our Supreme Court has noted, "[t]he relevant exclusionary provisions of Rule 600 and former Rule 1100 are materially the same." *Commonwealth v. Baird*, 975 A.2d 1113, 1115 n. 1 (Pa. 2009). "Accordingly, for the sake of convenience and clarity, we will substitute the applicable numbering nomenclature of Rule 600 for that of old Rule 1100." *Commonwealth v. Sloan*, 907 A.2d 460, 463 n.5 (Pa. 2006).

not entitled to immediate review. *Commonwealth v. Myers*, 322 A.2d 131, 133 (Pa. 1974); *see also Commonwealth v. Johnson*, 705 A.2d 830, 833 (Pa. 1998) ("As long as there has been a hearing in the court below on the speedy trial issue, the right to a speedy trial can be adequately protected in a review following trial."). Thus, Appellant's October 2014 appeal was from an interlocutory order and did not deprive the trial court of jurisdiction. As a result, Appellant's trial and judgment of sentence are not legal nullities. *Cf. Commonwealth v. Salley*, 957 A.2d 320 (Pa. Super. 2008).

Appellant next contends that the trial court erred by quashing the subpoena issued to Mary Henry. Appellant's Brief at 40-44. We review the trial court's grant of the motion to quash for an abuse of discretion. *Branham v. Rohm and Haas Co.*, 19 A.3d 1094, 1102 (Pa. Super. 2011). "So long as there is evidence which supports the lower court's decision, it will be affirmed." *Id.* at 1103 (quoting *In re Subpoena No. 22*, 709 A.2d 385, 387 (Pa. Super. 1998)).

In his brief, Appellant insists that Ms. Henry should have been ordered to comply with the subpoena because the method of service had been proper. Appellant's Brief at 41-44. Appellant's argument is unavailing. The record shows that Ms. Henry was an employee of MidAtlantic Farm Credit ("MidAtlantic"), which falls under the auspices of the Farm Credit Administration ("FCA"). The FCA, a federal agency, has issued regulations outlining the procedures necessary to secure the testimony of FCA

employees as well as the production of documents. **See generally** 12 C.F.R. §§ 602.19-602.21. Here, those regulations supplanted the measures typically required to obtain witness testimony. **See First Fed. Sav. & Loan Ass'n of Hazleton v. Office of State Treasurer, Unclaimed Prop. Review Comm.**, 669 A.2d 914, 916 (Pa. 1995) ("Federal regulations have no less of a preemptive effect than federal statutes."). Counsel for MidAtlantic twice apprised Appellant of the FCA regulations: first in December of 2013 and again in April of 2014. The record, however, is devoid of any indication that Appellant complied with the pertinent regulations to secure Ms. Henry's testimony. **See** N.T., Jury Trial, 11/4/14, at 7-10. We therefore conclude that the trial court did not abuse its discretion in quashing the subpoena issued to Mary Henry.[9]

We next address Appellant's claim that the trial court should have entered sanctions against the Commonwealth for failing to supply Appellant with a Department of Transportation logbook ("the logbook") in discovery. Courts, by rule, have the authority to impose penalties when there are discovery violations.

_____

[9] We note that the trial court premised its decision to quash the subpoena on Appellant's failure to serve Mary Henry individually. N.T., Jury Trial, 11/4/14, at 12, 14, 16-17. Nonetheless, we may "affirm an order if it is correct for any reason, regardless of the reason upon which the lower court relied for its decision." **Salazar v. Allstate Ins. Co.**, 702 A.2d 1038, 1045 n. 13 (Pa. 1997).

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule[, which governs discovery matters,] the court may order such party to permit discovery or inspection, may grant a continuance, or **may prohibit such party from introducing evidence not disclosed**, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E) (emphasis added). In the present case, the trial court denied Appellant's motion for sanctions but forbade the Commonwealth from "using any testimony concerning [the logbook]." Trial Court Order, 3/26/14. We will not disrupt an order imposing sanctions unless, in doing so, the trial court abused its discretion. *Commonwealth v. Jordan*, 125 A.3d 55, 65 (Pa. Super. 2015).

According to Appellant, the trial court erred by failing to impose sanctions. Appellant's Brief at 4. However, as indicated above, the trial court did sanction the Commonwealth by prohibiting it from introducing testimony related to the logbook. That the penalty did not meet with Appellant's satisfaction does not render the trial court's decision an abuse of discretion. Appellant does not contend, let alone prove, that the Commonwealth acted intentionally to deprive him of potentially exculpatory evidence. In fact, Appellant acknowledges that the loss of the logbook was entirely beyond the Commonwealth's control. Appellant's Brief at 51. Under such facts, it is difficult to perceive an abuse of discretion when the trial court selected a remedy clearly enumerated in Pa.R.Crim.P. 573(E). We

therefore conclude that the trial court did not abuse its discretion in its choice of remedy.

With his fifth issue, Appellant contends that he should receive a new trial because of evidence discovered "days after trial." Appellant's Brief at 53-59. Before addressing the merits of Appellant's argument, we first review the facts relevant to Appellant's claim.

At trial, the Commonwealth presented the testimony of Dennis Houser who was, *inter alia*, a certified forensic accountant. **See** N.T., Jury Trial, 11/4/14, at 263-64, 273-94. On cross-examination, Appellant questioned Houser as to the accuracy of the financial documents upon which Houser had based his expert opinion.[10] **Id.** at 301-05. Houser indicated that the records were accurate. **Id.** Later, Donald Umberger, one of Appellant's victims, testified that a certain $50,000 entry in the business's accounts receivable reflected receipt of a payment that Appellant had made. **Id.** at

---

[10] Appellant claims in his brief that he asked Houser whether he had "verified each of the entries contained in the account receivable history" and that Houser replied that he had not. Appellant's Brief at 54. However, Appellant has not provided any citation to the record in support of his assertion and our review of the trial transcript suggests that Appellant never asked Houser such a question. Moreover, this Court will not "scour the record to find evidence to support an argument." **Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007); Pa.R.A.P 2119(c) (if reference is made to evidence of record, "the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears[.]"

- 14 -

451. He further stated that he believed the money had been the proceeds of a loan procured by Appellant. *Id.* at 458-59. Appellant then questioned the accuracy of the accounts receivable during Umberger's cross-examination. *Id.* at 459-66. As previously mentioned, the jury ultimately found Appellant guilty of all charges.

On November 14, 2014, Appellant filed a motion for mistrial.[11] Appellant asserted in this motion that the Commonwealth had failed to disclose materials that suggested that Umberger had been incorrect about the source of the $50,000 reflected in the accounts receivable. Motion for Mistrial, 11/14/14, at ¶¶ 11-22. Appellant further claimed that the $50,000 had come from a transaction between Umberger, Agricredit Acceptance, LLC ("Agricredit"), and a Wayne Thiel. *Id.* at ¶¶ 13-17. To substantiate his assertions, Appellant produced documents indicating that Umberger had received the $50,000 from Agricredit after assigning to it a contract between himself and Thiel. *Id.* at Exhibits B, C. Nevertheless, the trial court denied Appellant's Motion for Mistrial on November 19, 2014.

During the present appeal, Appellant maintains that he is entitled to a new trial because putative "after-discovered evidence," in the form of the agreements between Umberger, Thiel, and Agricredit, casts doubt upon the

_____

[11] As noted by the trial court prior to the present appeal, Appellant's motion was, by definition, not one for a mistrial. Trial Court Opinion, 4/21/15, at 2 n.2. In effect, Appellant filed a post-trial motion requesting a new trial.

information underlying Dennis Houser's expert testimony. Appellant's Brief at 57. "When we examine the decision of a trial court to grant [or deny] a new trial on the basis of after-discovered evidence, we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Padillas*, 997 A.2d 356, 361 (Pa. Super. 2010).

To merit a new trial due to after-discovered evidence, Appellant must establish that the evidence satisfies each of the following elements:

> The evidence: (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict.

*Commonwealth v. Castro*, 93 A.3d 818, 821 n.7 (Pa. 2014). Here, it is apparent that the sole use of the evidence will be to impeach credibility. In fact, Appellant acknowledges that the "import of the accounts receivable history lies in the opinion and testimony of . . . Dennis Houser." Appellant's Brief at 54. Appellant likewise alleges that the after-discovered evidence means that Houser's report and testimony "must be rejected in its entirety" because "one entry of the accounts receivable history has been shown false." Appellant's Brief at 57. Yet, Appellant fails to explain how the intended use of this evidence is anything but an impeachment of Houser's credibility. Credibility is "the quality that makes something (as a witness or some evidence) worthy of belief." Black's Law Dictionary (10th ed. 2014).

The gravamen of Appellant's argument is that the possibly erroneous entry in the accounts receivable renders Houser unworthy of belief. ***See*** Appellant's Brief at 57. Appellant, therefore, wishes to use the evidence only as a means to impeach the credibility of Dennis Houser. Accordingly, Appellant fails to satisfy the third requirement for a new trial due to after-discovered evidence.[12] The trial court did not abuse its discretion in denying Appellant a new trial.

Turning now to Appellant's penultimate issue, we address whether the jury's verdict was against the weight of the evidence. Appellant first hazarded a weight of the evidence claim in a post-sentence motion for a new trial. ***See*** Motion for New Trial, 12/22/14, at ¶¶ 6-15. The trial court denied the motion on April 21, 2015.

> [W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003).

_____

[12] Parenthetically, we also note that it is doubtful that Appellant would satisfy the fourth element. The record shows that Houser based his report and testimony on numerous documents, not merely the accounts receivable history. ***Contra*** Appellant's Brief at 58. Indeed, Houser testified that he reviewed hundreds of pages of material while compiling his report and formulating his opinion. N.T., Jury Trial, 11/4/14, at 277. It is mere speculation to think that a single entry on a single document would have likely changed the outcome of Appellant's trial.

- 17 -

We have oft cited the following principles when undertaking an examination of a trial court's denial of a motion for a new trial based on a weight of the evidence claim:

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). Applying these standards to the present case, we conclude that Appellant's weight claim is no more than an invitation to "sit as the thirteenth juror." Appellant's argument is simply that the jury "overlooked" important facts and "ignored" allegedly faulty testimony. *See, e.g.,* Appellant's Brief at 60-62. However, "the finder of fact . . . is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Forbes*, 867 A.2d 1268, 1272-73 (Pa. Super. 2005) (citation omitted). Thus, the trial court did not abuse its discretion by denying Appellant's motion for a new trial due to the weight of the evidence.

Finally, Appellant maintains that he did not have the benefit of an impartial jury. *See* Appellant's Brief at 67-70. Relevant to this allegation, the trial court released the jury for deliberations at 3:47 p.m. on November

- 18 -

5, 2014. N.T., Jury Trial, 11/4/14, at 468. Appellant maintains that the jury then reported at 5:00 p.m. that it was not close to reaching a verdict. Appellant's Brief at 67. In response, the trial court ordered dinner for the jury and indicated that it would hold the jury until it reached a decision.[13] *Id.* At 6:41 p.m., the jury entered the courtroom and delivered its verdict: guilty on all counts. N.T., Jury Trial, 11/4/14, at 469-70. According to Appellant, the possibility of staying late into the night acted as an improper, extraneous influence and thereby deprived him of an impartial jury. Appellant's Brief at 68-70.

"To prevail on a claim that an extraneous influence compromised the impartiality and integrity of the jury, Appellant must prove the extraneous influence caused a reasonable likelihood of prejudice." ***Commonwealth v. Bomar***, 104 A.3d 1179, 1211 (Pa. 2014) (citation and internal quotation marks omitted). Here, Appellant fails to satisfy his burden. Indeed, Appellant confesses in his brief that there is "no proof that holding [the] jurors as late as necessary for them to reach a verdict . . . resulted in influence on them." Appellant's Brief at 69. Similarly absent from Appellant's brief is any citation to decisions wherein courts have found that holding a jury until it reaches a decision exerts an improper influence upon

---

[13] As noted by Appellant, the jury's report and the trial court's statement do not appear in the transcript. Appellant's Brief at 67. However, the trial court's opinion does not dispute the factual assertions made by Appellant. *See* Trial Court Opinion, 4/21/15, at 12-13.

the deliberative process. Thus, we conclude that Appellant is not entitled to a new trial because the trial court did not err by holding the jury past normal courthouse hours.

In sum, based on the foregoing, none of the seven errors alleged by Appellant entitles to him to relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/13/2016