594 A.2d 796

**PARENTS AGAINST ABUSE IN SCHOOLS; Valrie C. Novinger, parent and guardian of John Novinger, Jr., a minor; et al.**

**v.**

**The WILLIAMSPORT AREA SCHOOL DISTRICT; Oscar W. Knade, Jr., Superintendent of Schools; and Simon Samuel, Williamsport Area School District Psychologist. (Two Cases)**

**Appeal of Simon SAMUEL, Appellant.**

**Appeal of Simon SAMUEL, Williamsport Area School District Psychologist, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 1990.

Decided June 25, 1991.

560

Clifford A. Rieders and Robert Vesely, for Parents Against Abuse in Schools.

David C. Shipman, Williamsport, for appellants.

Before McGINLEY and BYER and CRUMLISH, Jr., Senior Judge.

BYER, Judge.

This is an appeal from an order of the Court of Common Pleas of Lycoming County denying a petition to open a peremptory judgment in a civil action—mandamus. The issues have already been thoroughly and thoughtfully considered by the trial court in its three opinions in this case. We affirm its decision.

The plaintiffs (collectively, parents) are a parents association and a number of individual parents of fourth graders who suffered physical and emotional abuse during the 1987–88 school year at the hands of their teacher, an employee of the Williamsport Area School District. In an attempt to discover the precise nature of the abuse so that the teacher could be removed from his position, and to determine if the children would require outside counseling, the parents consented to the school district's request to permit one of its psychologists, Simon Samuel, to interview their children.

The parents conditioned their consent to the interviews upon an agreement between the parents and the school district; any information gathered by Samuel during the interviews was to be provided to the parents to assist them in obtaining outside professional therapy for their children at the school district's expense. Although Samuel indicated that he had compiled notes from the interviews, and the parents gave written authorization for release of the notes, the school district and Samuel have not supplied reports, notes, or information of any type to the parents, as required by the agreement.

The parents filed a civil action—mandamus and moved for peremptory judgment against the school district, its superintendent and Samuel. The parents requested the trial court to order the defendants to provide copies of the notes Samuel recorded during the interviews of their children. The trial court ordered the defendants to provide the inter-

view notes to the parents. After some procedural skir-
mishes, described below, the case now is properly before us
on appeal solely by Samuel. The other defendants no
longer dispute the parents' right to obtain the interview
notes.

## I. Procedural Considerations

The procedural aspects of this case have caused us some
concern, particularly in view of a dispute between the
parties regarding which orders of the trial court properly
are before us for review. The procedures followed in this
case are somewhat unorthodox.

Plaintiffs commenced the action by writ of summons.
They then filed simultaneously a complaint and a motion for
peremptory judgment in mandamus under Pa.R.C.P. 1098.
Defendants filed preliminary objections to the complaint
and an answer to the motion for peremptory judgment.[1]

The parties filed a stipulation of facts. On August 1,
1989, the trial court filed an opinion and order granting the
relief requested by the plaintiffs, but without stating
whether the trial court was entering peremptory judgment
or deciding the case as a nonjury trial based on a stipulation
of facts.[2]

Defendants then filed both a notice of appeal to this court
and a document entitled "Motion of Defendants for Recon-
sideration (Post–Trial Motion)." Defendants' motion assert-
ed that the trial court had based its August 1, 1989 ruling
on facts which were beyond the stipulation and, therefore,
not in evidence.

On August 30, 1989, the trial court issued an order
granting the motion for reconsideration of the August 1,
1989 order, which the trial court vacated.[3] This order

1. The docket entries erroneously list the answer to the motion for
peremptory judgment as an answer to the complaint.

2. *See McCarron v. Upper Gwynedd Township,* 139 Pa.Commonwealth
Ct. 528, ——, 591 A.2d 1151, 1154 (1991) (Byer, J., concurring).

3. Although the August 30, 1989 order identifies the August 1, 1989
order as the subject of the reconsideration, the literal text of the order

granting reconsideration rendered the notice of appeal "inoperative." Pa.R.A.P. 1701(b)(3).

The trial court then conducted an evidentiary hearing on November 21, 1989. On January 16, 1990, the trial court filed an opinion and order. The opinion states that the trial court has decided to "reaffirm our August 1, 1989 Order." The January 16, 1990 order accompanying that opinion states merely that "after hearing, it is ORDERED and DIRECTED that the relief requested in Defendants' Motion to Reconsider is DENIED."

Following the January 16, 1990 opinion and order, defendant Samuel, represented by new counsel, filed a notice of appeal to this court, which currently is before us at No. 369 C.D.1990, and a Petition to Open Peremptory Judgment.

The trial court then filed an "Opinion in Response to Appeal of Defendant Simon Samuel" on March 14, 1990. The concluding paragraph of the opinion reads, "[a]ccordingly, for the reasons as outlined in this Opinion, we reaffirm our prior Orders in this case denying Mr. Samuel's Petition to Open Peremptory Judgment."

Treating the last paragraph of the March 14, 1990 opinion as an order denying the petition to open peremptory judgment, Samuel filed another notice of appeal to this court on April 12, 1990. This appeal currently is before us at No. 799 C.D.1990.

■ Thus, Samuel currently has two appeals before us: (1) at No. 369 C.D.1990, an appeal from the January 16, 1990 order denying relief to Samuel after the evidentiary hearing following reconsideration of the August 1, 1990 order granting relief in mandamus; and (2) at No. 799 C.D.1990, an appeal from the "order" contained in the last paragraph of the March 14, 1990 opinion denying the petition to open peremptory judgment.

vacates an order dated "August 24, 1989." There is no August 24, 1989 order in the record of this case, so we assume this was an error and that the trial court intended to vacate the August 1, 1989 order.

Although we are not without doubt on this question, we believe that there is an appeal properly before us from the denial of a petition to open a peremptory judgment in mandamus, although this might require us to treat the last paragraph of the March 14, 1990 opinion as an order, notwithstanding Pa.R.A.P. 301(b) ("Every order shall be set forth on a separate document."). *See Brandschain v. Lieberman,* 320 Pa.Superior Ct. 10, 466 A.2d 1035 (1983) (separate document requirement of Pa.R.A.P. 301(b) is not jurisdictional); *but see Mitchum v. Atlantic Richfield Co.,* 364 Pa.Superior Ct. 583, 528 A.2d 662 (1987) (appeal quashed on motion of appellee where "order" merely was last paragraph of opinion). Our willingness to find an appealable order is based in large part upon the fact that we are unwilling to place all the consequences on defendant of what might have been a failure by the trial court to precisely characterize the nature of the proceedings and relief granted at the various stages of this case.

In the alternative, the parents concede that the January 16, 1990 order was appealable and it is properly before us. However, the parents characterize that order as an action by the trial court which "reaffirmed its Order of Peremptory Judgment." Brief for Appellees, 12. We would agree that the January 16, 1990 order is appealable only if that order were deemed to be the denial of a petition to open the peremptory judgment, in which event the filing of the timely appeal from that order deprived the trial court of jurisdiction, by operation of Pa.R.A.P. 1701(b), to consider what would have been a superfluous, second petition to open the peremptory judgment.

 We do not think it matters much, in the context of this case, which of the orders we consider to be appealable, because in either event we would hold that Samuel has not waived any of the questions he presents for review. Therefore, we will not quash either of the appeals, but consider them as a single appeal. However, we strongly suggest

that the unorthodox procedures followed in this case not be repeated.[4]

## II. Propriety of Mandamus

 Samuel first argues that the trial court erred in granting mandamus relief, because he claims other adequate remedies were available. Mandamus is an extraordinary remedy which is available to compel performance of a ministerial act or mandatory duty where the plaintiff's legal right is clear and there is no other adequate remedy. *York–Green v. Board of Supervisors of South Hanover,* 87 Pa.Commonwealth Ct. 93, 95, 96, 486 A.2d 561, 563 (1985). We have gone so far as to suggest that the exist-

---

**4.** We reiterate that where the trial court enters a peremptory judgment in mandamus, an aggrieved party who desires to challenge the order must file a petition to open the peremptory judgment under Pa.R.C.P. 1098. The peremptory judgment itself is not appealable, and the aggrieved party may appeal only from the order denying the petition to open. *See Hamby v. Stoe,* 448 Pa. 483, 295 A.2d 309 (1972); *Flaherty v. City of Pittsburgh,* 100 Pa.Commonwealth Ct. 508, 515 A.2d 91 (1986); *Washowich v. McKeesport Municipal Authority,* 94 Pa.Commonwealth Ct. 509, 503 A.2d 1084 (1986); *Butler v. Emerson,* 76 Pa.Commonwealth Ct. 156, 463 A.2d 109 (1983).

A petition to open a peremptory judgment in mandamus is filed pursuant to Pa.R.C.P. 1098. It is neither a motion for post-trial relief under Pa.R.C.P. 227.1 nor an application for reconsideration within the contemplation of Pa.R.A.P. 1701(b)(3).

Where, as here, it is unclear from the procedural context of the case whether the trial judge is entering a peremptory judgment in mandamus or deciding the case on the basis of non-jury trial on stipulated facts, it would be helpful if the trial court would expressly state whether the order granting or denying relief is based upon the motion for peremptory judgment or is in the nature of a decision following a non-jury trial on stipulated facts.

Where, as here, a trial judge enters a peremptory judgment in mandamus but then decides to grant relief from that order and conduct what amounts to a non-jury trial, the trial court should not "vacate" or "grant reconsideration" of the peremptory judgment, but should open the judgment under Pa.R.C.P. 1098 and, once the pleadings are closed, conduct a non-jury trial under Pa.R.C.P. 1038 and 1099. If, after the non-jury trial, the trial court then decides to grant relief in mandamus, the trial court should not "reaffirm" or "reinstate" the peremptory judgment, but should decide the case under Pa.R.C.P. 1038(d). After such a decision, a party who wishes to preserve issues for appellate review must file a motion for post-trial relief within 10 days of the decision in accordance with Pa.R.C.P. 227.1.

ence of an adequate, alternative statutory remedy deprives a court of jurisdiction to grant relief in mandamus. *Merritt v. West Mifflin Area School District*, 56 Pa.Commonwealth Ct. 126, 424 A.2d 572 (1981).

Samuel does not assert the existence of an adequate alternative statutory remedy; but he does claim the parents have three available non-statutory remedies which preclude mandamus relief. Two of these alleged alternative, adequate remedies are actions in equity, namely an action for specific performance and an action for a mandatory injunction.

We find the argument that mandamus relief is not available where there is an adequate remedy in equity to be most unique. Mandamus is an action at law. The usual argument is that the availability of an action at law precludes relief in equity. The logical implication of Samuel's argument is that the parents cannot maintain at action at law where the remedy in equity is adequate. Although we easily could dismiss Samuel's argument solely because it is completely illogical, we nevertheless will deal with it, because the argument clearly is without merit even apart from the fact that it inverts the principles governing the availability of relief in equity.

Samuel's argument that the parents have an adequate remedy in the form of an action for specific performance of their contract with the school district misperceives the nature of the parents' claim. The parents' claim is not based upon the existence of a contract. Instead, their claim is to enforce the school district's legal duty pursuant to the regulation of the Department of Education at 22 Pa.Code § 12.33(1.0) to obtain informed parental consent before collecting information from the student. The informed consent in this case was conditioned upon the parents' right to receive the interview notes which Samuel now seeks to withhold. They also seek to enforce their right of access to these records under the department's regulations implementing the federal requirements under 20 U.S.C. § 1232g.

Furthermore, it is difficult to see how Samuel proposes the parents could maintain an action for specific performance against him, when he claims he was not a party to the contract which he contends could be the subject of an action for specific performance.[5] Under Samuel's theory, the contract is between the parents and the school district, and Samuel is asserting a "right" to retain the interview notes notwithstanding the contract he claims was made by his employer. Therefore, it is difficult to see how Samuel could be subject to an action for specific performance, although, as a school district employee, he is subject to enforcement of Department of Education regulations.

■ Although the availability of an adequate contract action might preclude mandamus relief, *Kaelin v. University of Pittsburgh*, 421 Pa. 220, 218 A.2d 798 (1966); *Strank v. Mercy Hospital of Johnstown*, 383 Pa. 54, 117 A.2d 697 (1955) (when right or duty asserted rests wholly on contract, a common pleas court cannot issue a writ of mandamus), a mandamus action is proper to enforce a mandatory legal duty imposed on school authorities. *Elias v. Board of School Directors of Winber Area*, 421 Pa. 260, 218 A.2d 738 (1966); *Pittenger v. Union Area School Board*, 24 Pa.Commonwealth Ct. 442, 356 A.2d 866 (1976). Because this action involves enforcement of legal duties of the school authorities, a mandamus action is appropriate.

Samuel's contention that mandamus is unavailable because the parents could file an equity action for a mandatory injunction to require school officials to comply with 22 Pa.Code § 12.33 and provide copies of the notes as student records pursuant to this regulation borders on the frivolous. As counsel for the parents states in the Brief for Appellees, "[i]f a mandamus action could be defeated by an argument that the Defendants could be compelled to perform their legal duty by an injunction, it is difficult to perceive any mandamus action which could not be so defeated." Brief for Appellees, 15. Here, we are dealing with enforcement

5. See Part IV-B, *infra*.

of clear duties imposed by law. This is the province of a civil action—mandamus.

The same may be said of the third remedy suggested by Samuel, an action for declaratory judgment. Although the parents could have pursued such an action, it is obvious that merely declaring the rights of the parties would not afford complete relief. The parents' rights are clear. They want the notes, not just a declaration that they are entitled to them.

Therefore, we hold that there is no adequate, alternative remedy, and mandamus is an appropriate remedy.

### III. Parents' Rights to Obtain Interview Notes

■ Samuel contends that the parents did not establish a clear legal right to the notes as school records under the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. 1232g, or pursuant to the Department of Education regulations at 22 Pa.Code §§ 12.31–33, promulgated consistent with FERPA policies. Under FERPA, records of educational personnel in the sole possession of the maker and not accessible or revealed to any other person are specifically excluded from the definition of educational records subject to parental inspection under the act. 20 U.S.C. § 1232 g(a)(4)(B)(i). Although Pennsylvania Department of Education regulations classify student records into three categories, (A, B and C), each with its own specific parental access requirements, 22 Pa.Code § 12.33 (2.1–2.3), (4.0–4.9), Samuel contends that a fourth category in 22 Pa.Code § 12.33 (2.4) mirrors the FERPA exclusion, thus eliminating his notes from the students' records altogether.

22 Pa.Code § 12.33 (2.4) provides as follows:

2.4. *Confidential, Personal Files of Professionals in the School* (school psychologist, social workers, counselors): We recognize that, *in some instances,* professionals working in the school may maintain personal and confidential files containing notes, transcripts of interviews, clinical diagnoses and other memory aids for *their own*

*use in counseling pupils.* Any and all data that are considered to be the personal property of the professional should be guarded by the rules given above in addition to those dictated by professional ethics, *subject to the terms of the employment contract between the school and the professional and any special agreements made between the professional and individual parents and/or students.* (Emphasis added.)

Samuel argues that this provision should be interpreted identically to FERPA's broad exclusion of all records of school personnel so long as such records are kept in the maker's sole possession and are not accessible or revealed to others. 20 U.S.C. § 1232g(a)(4)(B)(i). Under this interpretation, Samuel claims that the notes would not be student records subject to disclosure, because there is evidence that Samuel has privately kept these notes at home, as was his established practice. However, we disagree with his interpretation of 22 Pa.Code § 12.33 (2.4). Instead, we agree with the trial court's analysis of this provision, which emphasizes that "[p]aragraph 2.4 recognizes that only in 'some instances' will notes be considered personal or confidential." March 14, 1990 Opinion, 8. This situation did not present one of those "instances," because the parents and the school district permitted Samuel to interview the children only on the express condition that he provide the information to the parents of the affected children.

Moreover, the trial court also correctly recognized that "the confidentiality concept in paragraph 2.4 applies only to notes maintained by psychologists for 'their own use in counseling pupils.'" *Id.*, 9. However, the parents and school district had agreed that Samuel was not to provide the children with any therapy; any counseling was to be done by third party professionals at the school district's expense. Samuel's notes were to be used only to advance this purpose, and thus were not the type envisioned by paragraph 2.4 as needing protection from disclosure.

In addition, paragraph 2.4 clearly limits its application and is expressly subject to the terms of the employment

contract between the school district and the psychologist and any special arrangements made between the psychologist and individual parents or students. Here, the school district has agreed that Samuel, as its employee, must provide the notes to the parents and does not contest the parents' rights to the notes.

Finally, if we look to FERPA to determine the appropriate public policy, we must side with the parents. Apart from containing general provisions designed to insure parental access to school records concerning their minor children, FERPA excludes from the definition of "education records," to which parents have access, records of a psychologist only if those records relate to a student who is at least 18 years old or attending a post-secondary educational institution and which are made or used only in connection with providing treatment. 20 U.S.C. § 1232g(a)(4)(B)(iv). The notes involved here do not meet either of these two requirements for exclusion from the parents' right of access, because the children are minors attending an elementary school, and Samuel was not involved in treating the children. Furthermore, this provision of FERPA makes clear that even if the exclusion were to apply, it would not give the psychologist a personal right to preclude all access to the records, but provides that the student would have a right to have the records reviewed by an appropriate professional of the student's choice. *Id.*

Therefore, neither the Department of Education regulations nor FERPA defeat the parents' rights to the notes, but instead provide the parents with a complete right of access.

## IV. Enforceability of School District's Promise

Samuel argues that the parents can not establish a clear legal right to the notes, because the school district's promise to turn the notes over to the parents is unenforceable. We find all these arguments to be without merit.

## A.

■ Samuel alleges that the promise was unenforceable as a matter of law pursuant to Section 508 of the Public School Code of 1949,[6] 24 P.S. § 5–508. This section provides in pertinent part:

The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects:—

\* \* \* \* \* \*

Entering into contracts of any kind, including contracts for the purchase of fuel or any supplies, where the amount involved exceeds one hundred dollars ($100).

\* \* \* \* \* \*

Failure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforceable.

■ Although a formal recorded vote is not required, *Mullen v. DuBois Area School District*, 436 Pa. 211, 259 A.2d 877 (1969), solid proof of compliance nevertheless is required before a court will find an enforceable contract. *Grippo v. Dunmore School Board*, 27 Pa.Commonwealth Ct. 507, 365 A.2d 678 (1976); *Gordon v. Board of Directors of Westside Area Vocational Technical School*, 21 Pa.Commonwealth Ct. 616, 347 A.2d 347 (1975); *School District of Philadelphia v. Framlau Corp.*, 15 Pa.Commonwealth Ct. 621, 328 A.2d 866 (1974). The trial court found adequate proof of board approval, but Samuel nevertheless claims there was no evidence that a majority of the school board voted to approve the agreement between the parents and the school district.

However, even if Samuel were correct that a majority of the school board did not approve the agreement, it would be irrelevant. As the trial court correctly held, Section 508 is inapplicable here. The clear language of the statute shows

6. Act of March 10, 1949, P.L. 30, as amended.

that Section 508 is concerned only with contracts involving expenditures of funds; no such expenditure is questioned here. Moreover, as previously noted, the parents' claim is not contractual in nature, and they have a clear legal right to the notes.

## B.

■ Samuel contends that even if an agreement existed between the parents and the school district, he was not a party to the agreement and, therefore, could not be bound by its terms. Samuel asserts that the agreement was made without his knowledge or participation and he was informed of no special conditions before conducting the student interviews. Thus, Samuel contends that the 24 Pa.Code § 12.33 (2.4) limitation, allowing disclosure of otherwise confidential materials, would not apply because it is triggered only by agreements made "between the professional and individual parents," not between the parents and the professional's employer.

However, Samuel ignores the fact that he was working exclusively at the direction of his employer, the school district. The employer had the right to promise to turn over the notes to the parents as a condition to obtaining the parents' informed consent. The record demonstrates that Samuel conducted the interviews and made the notes with knowledge that his employer had promised to disclose the information.

Samuel further argues that any state action requiring him to turn over his personal work product without his permission and despite his objections, violates his constitutional rights. He relies upon *Alinovi v. Worcester School Committee*, 777 F.2d 776 (1st Cir.1985). However, *Alinovi* dealt with work which the employee produced outside the course of her employment, and certainly not at her employer's direction, as is the case here. Moreover, even under these circumstances, *Alinovi* found no constitutional violation in requiring the employee to turn over her work prod-

uct. Therefore, the case does not support Samuel's position.

Samuel's argument ignores the fact that he has no property right in these notes. Not only do the parents have a clear legal right of access to them, Samuel's employer unquestionably has the right to agree that its employee's work product would be turned over to the parents. Samuel cites no authority to the contrary.

## C.

Finally, Samuel argues that the school district's agreement to provide the notes to the parents should not be enforced, because: (1) the agreement was not preceded by formal negotiations; (2) the parental consent to conduct interviews was not valid consideration to support the agreement, because the board was free to interview the students without consent under 22 Pa.Code § 12.33(1.7); and (3) the alleged agreement could not reasonably be interpreted to require disclosure of the notes as "information" gathered from the interviews, because this term was construed differently by the parties. We reject these arguments in turn.

1. The record indicates that the parents' spokesperson, Ms. Novinger, had several conversations concerning the interviews with the school principal, school superintendent and Samuel himself as school therapist (32a). In fact, the decision to have Samuel conduct the interviews, in exchange for any information gathered, was a compromise solution made necessary by time constraints and orchestrated by the school principal, the parent representative, and the attorney for the parents. (35a–36a). The existence of this agreement is disputed only by Samuel. Because, as previously discussed, Section 508 of the Public School Code of 1949, 24 P.S. § 5–508, is inapplicable here, nothing of a more formal nature was required.

2. We do not agree with Samuel that the school district had the authority to conduct these interviews with-

out parental consent under 22 Pa.Code § 12.33(1.7).[7] This provision obviously was intended to deal with situations where the requirement of informed consent *cannot* be met *and* intervention is imperative. Because the school district successfully obtained parental consent to conduct the interviews, this provision clearly did not apply here.

3. Samuel's argument that there was no meeting of the minds between the parents and principal as to what constituted "information" resulting from the interviews

7. 22 Pa.Code § 12.33(1.7) provides:

1.7. We recognize that certain special problems are presented by data-gathering in individual situations. Illustrative here are interviews or diagnostic tests by the school counselor, social worker, nurse, psychologist, school principal, etc. While the foregoing recommendations on informed consent should be applied in these situations where possible, there are special problems to be resolved. In most of this class of situations, the requirement of informed consent cannot be met, perhaps because of the age of the student, or the unforeseeable course of the interview process. Moreover, in many schools there is an element of duress in that the student feels obliged to participate in the situation. The principles advanced by the conferees for these situations are as follows:

1.7.1. The professional should inform the students as fully as possible, consonant with his professional responsibility and the capacity of the student to understand the implications of the situation, about the data that are likely to be obtained; and

1.7.2. Should stress the voluntary character of the student's participation.

1.7.3. Where reasonable doubt exists about the capacity of the student to understand the implications of the situation, either because of the student's age or other circumstances, parental permission should be sought first. Moreover, where a student clearly in need of intervention declines to participate, the professional should seek parental consent.

1.7.4. In either case, if parental consent is not given, further steps to provide assistance (including resort to the compulsory machinery of the school; for example, visits with the principal, sanctions, and the like) should be initiated only if the counselor or guidance officer;

a. Is entirely convinced, giving full attention to the privacy interest involved, that intervention is imperative;

b. Both the student and his parents have been fully informed, so far as that is possible; and

c. Appropriate school authorities (See 3.3) have consented.

1.7.5. It should be noted that the difficulties in meeting the criterion of informed consent in this type of situation place unusual stress on the proper management of recording of information and control over dissemination. (See 3.0–3.4)

need not detain us. Because the school principal understood the term "information" to mean "psychological reports" only (82a), while the parents felt that all information included notes as well, Samuel claims that he relied on a reasonable person standard to determine the meaning of the term. He concluded that a reasonable person would not include "notes" within the meaning of "all information gathered." Aside from our failure to appreciate the logic of his position, it is significant that the notes were the only record of the interviews. Therefore, it would seem only reasonable that the notes should be provided to the parents as part of all information gathered. If we were to decide otherwise, it would deny the parents access to any information at all.

### V. Health and Welfare of Abused Students

■ Samuel has raised numerous technical arguments in what appears to be a misguided attempt to place a personal principle above the legitimate efforts of the parents and the school district to help these victimized children. Even if any of these flimsy arguments had some superficial merit, they would be outweighed by the need to safeguard the health and welfare of these children.

The children involved are victims of abuse, and as such require special treatment to help them overcome its negative effects. The parents intend to use Samuel's notes, when they are provided, to enhance this process. Therefore, disclosure is authorized by 22 Pa.Code § 12.12(b), which provides:

§ 12.12. Confidential communications.

\*　　\*　　\*　　\*　　\*　　\*

(b) Information received in confidence from a student may be revealed to the student's parents, the principal or other appropriate authority where the health, welfare or safety of the student or other persons is clearly in jeopardy.

As the trial judge stated:

[i]t is very difficult for us to accept Mr. Samuel's opposition to release of copies of his notes on the basis of his own privacy or confidentiality interest. It would be far more appropriate, in our opinion, if his concerns were more directed to the welfare of the children who came to him upon the express condition that he would provide his work product to the children's parents.

March 14, 1990 Opinion, 19.

We agree, and we affirm.

## ORDER

We affirm the orders and judgment of the trial court.