# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gino's Bar, Inc.           :
                          :
           v.                 :
                          : No. 110 C.D. 2018
Pennsylvania Liquor       : Argued:  October 16, 2018
Control Board,            :
                          :
          Appellant      :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                     **FILED:  November 20, 2018**

        The Pennsylvania Liquor Control Board (PLCB) appeals from the December 21, 2017 order of the Court of Common Pleas of Allegheny County (trial court) holding that PLCB erred in its June 15, 2016 order denying the request of Gino's Bar, Inc. (Bar) to extend the safekeeping period for its restaurant liquor license.  For the reasons set forth below, we affirm the trial court's order.[1]

---

[1] The December 21, 2017 trial court "order" appealed from was not titled as such or entered onto the docket as an order, but instead was the concluding section of the trial court's opinion of the same date.  While this appears to violate Rule of Appellate Procedure 301(a) and (b), which requires that an order be entered on the docket in a separate document to be appealable, it is plainly evident that the trial court's December 21, 2017 opinion mandated the reversal of PLCB's June 15, 2016 order and was intended to be the final disposition of the Bar's appeal from the PLCB order.  Furthermore, the Bar has not objected to our consideration of this appeal and neither party has brought this issue to the Court's attention.  Accordingly, any issue related to the failure of the trial court to enter an order is waived, and we will address the merits of this appeal.  *See Parents*

On December 31, 2011, the building at 1021 Chartiers Avenue, in McKees Rocks where the Bar operated burned down in a fire. (PLCB Opinion, Finding of Fact (F.F.) ¶1, Reproduced Record (R.R.) 155a.) Egidio Mattucci, the sole shareholder of the Bar, died in the fire. (*Id*.) On January 16, 2012, Samuel Pasquarelli, the executor of Mr. Mattucci's estate, informed PLCB by letter of the recent events and stated that he had now assumed the role of president of the Bar. (R.R. 75a-76a.) PLCB informed the Bar that it was treating the January 16, 2012 letter as the return of the Bar's license to PLCB for safekeeping, beginning the three-year safekeeping period under Section 474.1 of the Liquor Code (Code).[2] (R.R. 78a-79a.)

On April 23, 2012, the Bar and Kings and Queens Lounge, Inc. submitted an application to transfer the license from the Bar to Kings and Queens Lounge for an establishment in McKees Rocks. (R.R. 92a-98a.) Though PLCB cancelled the transfer application during the fall of 2012, the application was reinstated pursuant to a January 3, 2013 letter from the attorney representing the

---

*Against Abuse In Schools v. Williamsport Area School District*, 594 A.2d 796, 800 (Pa. Cmwlth. 1991) (treating final paragraph of trial opinion stating that it was reaffirming prior orders in the case as an appealable order notwithstanding Pa. R.A.P. 301(b)); *Brandschain v. Lieberman*, 466 A.2d 1035, 1036 n.1 (Pa. Super. 1983) (ruling that opinion constituted an appealable order where appellee did not object, the opinion was intended to be the final decision in the case and the opinion was referred to as an order on the docket).

[2] Act of April 12, 1951, P.L. 90, *as amended*, added by the Act of December 9, 2002, P.L. 1653, 47 P.S. § 4-474.1. Section 474.1 was most recently amended by the Act of June 8, 2016, P.L. 273, effective August 8, 2016, subsequent to the events at issue in this appeal. The 2016 amendment made several changes including reducing the initial safekeeping period to two years and increasing the fees to be paid for extensions of the safekeeping period. When the language of the current version of Section 474.1 conflicts with the version in effect from November 29, 2006 to August 7, 2016, references to Section 474.1 in this opinion are to the former version of the statute.

2

applicants seeking additional time to respond to PLCB's concerns. (R.R. 100a-02a, 105a-06a.)

PLCB sent three additional letters to the Bar in 2013 and 2014 regarding the safekeeping period for the license. (R.R. 80a-84a.) In each of these letters, PLCB reminded the Bar that the three-year safekeeping period would expire on January 16, 2015 and that, pursuant to Section 474.1(b) of the Code, 47 P.S. § 4-474.1(b), the license would be immediately revoked as of this date unless there was a transfer application or application to reissue the license pending or unless PLCB had approved a one-year extension of the safekeeping period. (R.R. 80a, 82a, 84a.) On December 17, 2014, PLCB sent a letter stating that no application to transfer or reissue the license was pending, and unless the Bar filed an application to transfer or reissue the license or sought to extend the safekeeping period before its scheduled expiration on January 16, 2015, the license would be immediately revoked. (R.R. 85a.) However, in a January 16, 2015 letter, PLCB apologized for its error in its letter from the prior month and recognized that the Kings and Queens Lounge transfer application remained pending. (R.R. 86a.) Therefore, as of January 16, 2015, the date of the expiration of the three-year safekeeping period, a transfer application was pending before PLCB and the license was not subject to immediate revocation under the Code.

On April 6, 2015, Kings and Queens Lounge notified PLCB that it was withdrawing its transfer application. (R.R. 111a.) PLCB sent the Bar a letter on April 10, 2015 stating that, in light of the fact that the license had expired three months prior on January 16, 2015, the Bar must within 30 days submit either: (i) a transfer application, (ii) an application to reissue the license from safekeeping, or

3

(iii) an application to extend the safekeeping period.  (R.R. 87a-88a.)  The letter further stated:

> If a transfer application or Application for Return of License from Safekeeping is submitted, the investigative report must show that the applicant is in full compliance and the application is in line for approval.  If the application is not completely in line for approval upon receipt of the investigative report, then an Application for Extension of Safekeeping Period, form PLCB-2319, and requisite fee must be submitted. Failure to submit the Application for Extension of Safekeeping Period within thirty (30) days of the date requested will result in the revocation of the license.  No requests for reinvestigation will be honored unless and until the safekeeping period has been properly extended.

(R.R. 88a (emphasis in original).)

On May 11, 2015, the Bar filed a second transfer application with BCKC, LLC as the prospective transferee on the last day of the 30-day deadline set forth in PLCB's April 10, 2015 letter.[3]  (R.R. 113a-17a.)  On July 21, 2015, PLCB sent a letter to the attorney representing the applicants that listed various deficiencies in the application, requiring a response within 30 days or the application "may be considered for cancellation."  (R.R. 119a-21a.)  The letter stated that "since the transfer [is] not in line for approval, the Application for Safekeeping Period…must be filed for the transferor," and separately that "if this pending transfer is cancelled for any reason, the application for Extension of Safekeeping and fee will be required." (R.R. 119a, 121a.) On August 20, 2015, PLCB sent a letter to the attorney for the applicants stating that PLCB had not been provided with any of the

---

[3] The transfer application was filed on the 31st day after the April 10, 2015 letter, but the 30th day, May 10, 2015, was a Sunday.

information requested in its prior letter and therefore the application would be cancelled for non-compliance unless the applicants notified PLCB within 30 days that they were prepared to proceed. (R.R. 122a.)

On October 1, 2015, PLCB issued two letters. The first letter directed to both applicants stated that because no response had been received to PLCB's July 21 and August 20, 2015 letters, the pending transfer application to BCKC was cancelled for non-compliance. (R.R. 123a.) The second letter directed to the Bar stated that because the transfer application was cancelled, "in accordance with Section 474.1 of the Liquor Code, the license has been revoked effective October 1, 2015 by operation of law…." (R.R. 125a.)

On October 7, 2015, the Bar sent a letter enclosing an application to extend the safekeeping period for one year with the required $5,000 fee. (R.R. 127a.) The letter further stated that if the application was denied, the letter should be considered a formal request to challenge the denial of the application and revocation of the license. (*Id*.)

PLCB deemed the Bar's October 7, 2015 application to extend the safekeeping period to be untimely and therefore treated this letter as a request for *nunc pro tunc* relief to file the application. A hearing was held on the *nunc pro tunc* request on March 24, 2016 before a hearing examiner. No testimony was taken at the hearing nor was any evidence submitted aside from correspondence between PLCB and the Bar and the prospective transferees and a PLCB internal memorandum. PLCB issued an order on June 15, 2016 denying the request for *nunc pro tunc* relief with respect to the October 7, 2015 application. (R.R. 7a.)

In a later opinion issued in support of the Board's order, PLCB rejected the Bar's argument that it should have been entitled to file an application to extend

5

the safekeeping period within 30 days of the October 1, 2015 cancellation of the BCKC transfer application just as PLCB provided after the earlier withdrawal of the Kings and Queens Lounge transfer application because Section 474.1 of the Code did not authorize a 30-day "grace period." (PLCB Opinion, Discussion at 15, Conclusion of Law (C.L.) ¶5, R.R. 168a, 173a.) Furthermore, PLCB found the two scenarios to be different because the termination of the first transfer application was at the request of Kings and Queens Lounge while the October 1, 2015 cancellation was as a result of the applicants' failure to respond to either of PLCB's letters in July or August of that year that described deficiencies in the application. (*Id*., Discussion at 14-15, R.R. 167a-68a.) PLCB thus concluded that, when the BCKC transfer application was cancelled on October 1, 2015, the Bar's license was also immediately revoked on that date by operation of law pursuant to Section 474.1(b) and that there was no authority to even entertain an application to extend the safekeeping period after the revocation. (*Id*., Discussion at 15-16, C.L. ¶6, R.R. 168a-69a, 173a.) Nevertheless, PLCB determined that even if a *nunc pro tunc* analysis was conducted, PLCB determined that *nunc pro tunc* relief would be inappropriate because the Bar provided no argument or evidence that there was any extraordinary circumstances such as an administrative breakdown or non-negligent conduct of the Bar or its counsel that would justify the Bar's disregard of the two PLCB letters advising of defects in the BCKC application. (*Id*., Discussion at 17-18, C.L. ¶7, R.R. 170a-71a, 174a.)

The Bar appealed PLCB's order to the trial court on July 12, 2016, and PLCB filed a motion to dismiss in which it argued that the appeal was untimely because it was not filed within the 20-day time period set forth in Section 464 of the Code, 47 P.S. § 4-464. At the *de novo* hearing held on November 3, 2016, the trial

court first heard oral argument on the motion to dismiss and denied it, concluding that the appeal was timely. (Hearing Transcript at 12, R.R. 190a.) The trial court then considered the Bar's appeal, although no testimony was taken and no new exhibits were admitted beyond those introduced at the PLCB hearing.

In its opinion and order reversing the PLCB order, the trial court concluded that PLCB's April 10, 2015 letter gave the Bar reason to believe that the denial of a pending transfer application would trigger a 30-day period in which it would be entitled to either file a new transfer application or request an extension of the safekeeping period. (Trial court opinion at 5.) The trial court thus found that the Bar's application to extend the safekeeping period was timely and that the period must be extended for one year pursuant to Section 474.1(g) of the Code. (*Id.*) PLCB appealed the trial court's decision to this Court.[4]

On appeal, PLCB first argues that the trial court erred by denying its motion to dismiss because the Bar's appeal to the trial court was filed 27 days after PLCB issued its order on June 15, 2016, beyond the 20-day period prescribed in Section 464 of the Code. Section 464 provides that an applicant for a malt or brewed

---

[4] In cases in which the trial court conducts a *de novo* hearing, this Court's review is limited to whether the trial court's findings of fact are supported by substantial evidence and whether the trial court abused its discretion or committed an error of law. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge, Inc.*, 639 A.2d 14, 17-20 (Pa. 1994); *Pennsylvania Liquor Control Board v. Bartosh*, 730 A.2d 1029, 1032 (Pa. Cmwlth. 1999). In *Cantina Gloria's Lounge*, the Supreme Court held that a court of common pleas was required to conduct a *de novo* review of appeals concerning the suspension or revocation of a license under Section 471 of the Code, 47 P.S. § 4-471, as courts of common pleas do in cases brought under Section 464 related to denials of the issuance, renewal and transfer of a license even though Section 471 does not explicitly authorize *de novo* review as Section 464 does. Section 474.1, like Section 471, also does not contain language authorizing *de novo* review by a court of common pleas; while it appears that no court has addressed the proper standard of review from a PLCB appeal brought under Section 474.1 of the Code, neither party objected to the trial court hearing the appeal from PLCB's June 15, 2016 appeal *de novo*.

7

beverage license other than a public service license, or the renewal or transfer thereof, or an applicant for the renewal of an amusement permit may appeal the denial of an application to the court of common pleas within 20 days of the PLCB order. 47 P.S. § 4-464. This Court has recognized that the 20-day appeal period of Section 464 is mandatory and jurisdictional and may not be extended as a matter of grace and indulgence. *J.V. Lounge, Inc. v. Pennsylvania Liquor Control Board*, 131 A.3d 517, 521 (Pa. Cmwlth. 2015); *see also Arena Beverage Corporation v. Pennsylvania Liquor Control Board*, 97 A.3d 444, 448 (Pa. Cmwlth. 2014) ("[T]he timeliness of an appeal goes to the jurisdiction of the [court] appealed to and its competency to act.") (quoting *Coshey v. Beal*, 366 A.2d 1295, 1297 (Pa. Cmwlth. 1976)).

In this case, however, the Bar is not appealing a denial of a failure to issue, renew or transfer a license that would invoke Section 464 of the Code; instead, the Bar is appealing the denial of an application for a one-year extension of the safekeeping period under Section 474.1. Section 474.1 does not contain a time limit for appeals. Section 5571(b) of the Judicial Code provides that, "[e]xcept as otherwise provided…, an appeal from a tribunal or other government unit to a court or from a court to an appellate court must be commenced within 30 days after the entry of the order from which the appeal is taken, in the case of an interlocutory or final order." 42 Pa. C.S. § 5571(b). As our Supreme Court has explained, "[g]iven the overriding purpose of the Judicial Code, the obvious intent of the legislature in enacting this section was to make uniform the appeal period applicable to cases heard by our courts." *In re Appeal of Chartiers Valley School District from Assessment of Property of Development Dimensions International, Inc.*, 462 A.2d 673, 676 (Pa. 1983) (holding that when Section 5571(b) was added to the Judicial Code in 1978 it

8

was intended to repeal all contrary time limits for appeals from government agencies); *see Claims of Linefsky*, 632 A.2d 1061, 1063 (Pa. Cmwlth. 1993). Thus, in the absence of specific statutory language in Section 474.1 stating that appeals from the denial of an extension of the safekeeping period are governed by a 20-day appeal period, the general 30-day time period for filing an appeal of Section 5571(b) of the Judicial Code is applicable to appeals under Section 474.1. Because the Bar's appeal to the trial court was taken within 30 days of the entry of the PLCB order, the appeal was timely and the trial court correctly denied PLCB's motion to dismiss.[5]

As we have determined that the appeal from PLCB's order was timely, we must next address whether the Bar's October 7, 2015 application for a one-year safekeeping period was timely under Section 474.1 of the Code. Section 474.1 provides that any restaurant, eating place retail dispenser, hotel, importing distributor and distributor license that is not in use for more than fifteen days must be returned to PLCB where it will be held in safekeeping. 47 P.S. § 4-474.1(a). At the time of the events at issue in this appeal, the initial safekeeping period, before

---

[5] We further note that none of the three cases that PLCB cites supports its argument that the Bar's appeal was untimely. *J.V. Lounge* was a license renewal case while *J & R's Smokehouse, Inc. v. Pennsylvania Liquor Control Board*, 611 A.2d 786 (Pa. Cmwlth. 1992), related to the denial of an application to issue a license. Each case therefore clearly was an appeal under Section 464 of the Code. *Pennsylvania Liquor Control Board v. Sherman*, 566 A.2d 362 (Pa. Cmwlth. 1989), which PLCB argues directly rejects the Bar's argument that the 30-day appeal period of Section 5571(b) is applicable to this appeal, in fact relates to the issue of whether an appeal from a PLCB determination was properly filed in the court of common pleas or should have been brought in the first instance in this Court pursuant to the three exceptions to common pleas jurisdiction set forth in Section 933(a)(1)(v) of the Judicial Code. There is no question in this case that the trial court, rather than this Court, had jurisdiction over the Bar's appeal of the PLCB determination.

any extensions, was three years.[6]  *Former* 47 P.S. § 4-474.1(b).  Section 474.1

additionally provided, in relevant part:

> (b) The board may hold the license in safekeeping for a period not to exceed three consecutive years. Any license remaining in safekeeping for more than three consecutive years shall be immediately revoked by the Bureau of Licensing unless a transfer application or request for reissue from safekeeping has been filed prior to the expiration of the three-year period or unless the board has approved a request to extend the safekeeping for an additional year as set forth in subsection (g). …

> (c) In the event a transfer application filed prior to the expiration of the three-year period is disapproved by the board, then the license may remain in safekeeping so long as the licensee has submitted and the board has approved a request to extend the safekeeping for an additional year as set forth in subsection (g). Such request must be submitted within thirty days of the board's decision notwithstanding any appeal filed in the matter….

> …

> (g) (1) A licensee whose license is subject to this section may, upon written request, apply to the board to allow the license to remain in safekeeping for an additional one year. The written request must be accompanied by a five thousand dollar ($5,000) fee for licenses placed in safekeeping from counties of the first class, second class, second class A, third class and fourth class…. The board shall approve the request unless the license or licensee no longer meets the requirements of this act or the board's regulations.

*Former* 47 P.S. § 4-474.1(b), (c), (g)(1).[7]

---

[6] The initial safekeeping period was reduced to two years in the 2016 amendments to Section 474.1.  47 P.S. § 4-474.1(b).

[7] In addition to reducing the initial safekeeping period to a term of two years rather than three years, the 2016 amendments to Section 474.1 also doubled the fees for a one-year extension of the

10

PLCB argues that the trial court erred in ruling that the Bar's October 7, 2015 application to extend the safekeeping period was timely because Section 474.1 mandated that the license was revoked on October 1, 2015, the date that the BCKC transfer application was cancelled. PLCB asserts that, when the three-year safekeeping period expired on January 16, 2015, the application to transfer the license to Kings and Queens Lounge remained pending and therefore the immediate revocation of Section 474.1(b) was tolled. Though PLCB gave the Bar 30 days to file a new transfer application, application to reissue the license, or application to extend the safekeeping period when the Kings and Queens transfer application was withdrawn on April 6, 2015, PLCB asserts that Section 474.1 offered no 30-day grace period after the Bar filed a second transfer application to BCKC. PLCB argues that, when the BCKC transfer application was cancelled for non-compliance on October 1, 2015 following the applicants' lack of response to PLCB's July 21 and August 20, 2015 letters, the Bar's three-year safekeeping had expired and the Bar had failed to file an application to transfer the license, reissue the license or extend the safekeeping period. As a consequence of the Bar's failure to act and the resulting cancellation of the transfer application, PLCB asserts that the Bar's license was subject to the immediate revocation of Section 474.1(b). Therefore, according to PLCB, it was impossible for it to consider the Bar's October 7, 2015 application to extend the safekeeping period on a license that had been revoked by operation of law six days prior.

---

safekeeping period after the expiration of the initial safekeeping period and instituted a new price scheme whereby the fee for additional one-year extensions of the safekeeping period would double each year over the amount charged the year prior. 47 P.S. § 4-474.1(g)(1).

We conclude that, contrary to PLCB's arguments, neither Subsection (b) of Section 474.1 nor any other part of this statute required the immediate revocation of the Bar's license on October 1, 2015 when the BCKC transfer application was cancelled. As a result, PLCB's determination was that the October 7, 2015 application to extend the safekeeping period filed six days after the cancellation was not mandated by Section 474.1.[8] Section 474.1(b) states that a licensee whose license is in safekeeping must take one of three actions before the expiration of the initial safekeeping period: (i) file an application to transfer the license to another potential license holder, (ii) apply to have the license reissued to the licensee from safekeeping, or (iii) apply for a one-year extension of the safekeeping period. 47 P.S. § 4-474.1(b). If the licensee fails to choose one of those three options, then the license is immediately revoked. *Id.* Had the Bar failed to file an application to reissue or transfer the license or an application to extend the safekeeping period by January 16, 2015, the end of the three-year safekeeping period, we would have agreed with PLCB that revocation of the license would have been mandated by law and an application for an extension of the safekeeping period

---

[8] In this matter and in other all matters involving statutory interpretation, we apply the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1991, which provides that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a); *see also Department of Transportation, Bureau of Driver Licensing v. Weaver*, 912 A.2d 259, 264 (Pa. 2006). In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). The clearest indication of legislative intent is generally the plain language of the statute. *Doe v. Franklin County*, 174 A.3d 593, 605 (Pa. 2017). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b); *Weaver*, 912 A.2d at 264. It is only when the text of a statutory provision is ambiguous that we will consider the principles of statutory construction set forth in Section 1921(c) of the Statutory Construction Act, 1 Pa. C.S. § 1921(c), in order to determine legislative intent. *Chanceford Aviation Properties, L.L.P. v. Chanceford Township Board of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007).

would not have been permitted absent grounds for *nunc pro tunc* relief. However, in this case, the Bar did file an application to transfer its license to Kings and Queens Lounge in 2012 and that application remained pending as of January 16, 2015 when the safekeeping period expired. Therefore, the Bar's license was not subject to immediate revocation on January 16, 2015 under Section 474.1(b).

Subsection (c) of Section 474.1 relates to situations where a licensee has a transfer application pending at the expiration of the initial safekeeping period, providing that where a transfer application filed prior to the expiration of the safekeeping period is "disapproved by [PLCB], then the license may remain in safekeeping so long as" the licensee submits an application to extend the safekeeping period within 30 days. 47 P.S. § 474.1(c). However, Subsection (c) does not address the timeframe in which a licensee must act when PLCB allows a *second* transfer application and that application is cancelled, as occurred in this case. Furthermore, Subsection (g) relates to the fees that a licensee must enclose with an application for a one-year extension of the safekeeping period and the standard for approval of a request but does not speak to the time in which such an application must be filed. Thus, Section 474.1 is completely silent as to the situation in the present case where PLCB allows the licensee to file a second transfer application after a transfer application pending at the expiration of the safekeeping period and then the second transfer application is cancelled.[9] Moreover, the only mandatory requirement for PLCB to immediately revoke a license under Section 474.1 exists where the initial safekeeping expires and no application to transfer, reissue the license or extend the safekeeping period was filed, a factual scenario that does not exist here.

---

[9] Similarly, PLCB's regulation related to extensions of the safekeeping period largely reiterates Section 474.1 and does not address the factual scenario presented here. 40 Pa. Code § 7.31(d).

13

As we conclude that Section 474.1 did not require that PLCB reject the Bar's October 7, 2015 application to extend the safekeeping period, we must determine whether the trial court's conclusion that the application was timely constituted an error of law or abuse of discretion. In the April 10, 2015 letter giving the Bar the opportunity to submit a second transfer application, PLCB stated if the transfer application "is not completely in line for approval upon receipt of the investigative report" then an application to extend the safekeeping period would be required and failure to submit an application to extend "within thirty (30) days of the date requested will result in the revocation of the license." (R.R. 88a (emphasis in original).) In the July 21, 2015 letter listing deficiencies in the BCKC transfer application, PLCB stated that "if this pending transfer is cancelled for any reason, the application for Extension of Safekeeping and fee will be required." (R.R. 121a.) Read together, these letters give the impression that the Bar would be given an opportunity to file an application to extend the safekeeping period when "requested" or in the event the BCKC transfer application was cancelled and that the time period to file such an application would be 30 days. Furthermore, PLCB did not correct its representations in later correspondence with the Bar to state that the application to extend the safekeeping period would be required before the BCKC transfer application was cancelled. Accordingly, we see no reason to overturn the trial court's conclusion that the application to extend the safekeeping period was timely.

PLCB argues that the Bar's argument that it should have been allowed 30 days to file its application to extend the safekeeping period after the BCKC transfer application was cancelled is undermined by the fact that the Bar never responded to either the July 21 or August 20, 2015 letters that noted numerous deficiencies in the application and required responses within 30 days. Moreover,

14

PLCB asserts that the abundant deficiencies in the BCKC transfer application demonstrate that the application was invalid and not made in good faith. However, there is no support in the statute for a requirement that an application to extend the safekeeping period shall not be permitted after the cancellation of a flawed or bad-faith transfer application. Similarly, while PLCB indicated in its correspondence that an application to extend the safekeeping period would be required if the transfer application was not "completely in line for approval," these letters left the reasonable impression that the Bar would have the opportunity to file an application to extend the safekeeping period and this application would only have to be filed within 30 days after a request or a rejection of the transfer application. Nowhere in its letters did PLCB include a condition that the Bar would forfeit its opportunity to file a future application to extend the safekeeping period based on PLCB's evaluation of the sincerity or completeness of the transfer application it submitted.

Because we conclude that the trial court, after a *de novo* review, appropriately determined that the application to extend the safekeeping period was timely, we need not consider whether the application should have been accepted *nunc pro tunc*. Nevertheless, assuming that the application for an extension of the safekeeping period was required prior to the cancellation of the BCKC transfer application and PLCB could only have accepted it *nunc pro tunc*, we would conclude that *nunc pro tunc* relief was warranted in this instance.

Pursuant to *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130 (Pa. 1996), a party seeking *nunc pro tunc* relief must show (i) that extraordinary circumstances, involving fraud or breakdown in the administrative process or non-negligent circumstances related to the party, its counsel or a third party, caused the untimeliness; (ii) that it filed the document within a short time

15

period after the deadline or date that it learned of the untimeliness; and (iii) that the respondent will not suffer prejudice due to the delay. *Id.* at 1131; *Bureau Veritas North America, Inc. v. Department of Transportation*, 127 A.3d 871, 879 (Pa. Cmwlth. 2015). A breakdown in the administrative process occurs where the agency is negligent, acts improperly or unintentionally misleads a party. *Union Electric Corp. v. Board of Property Assessment, Appeals & Review of Allegheny County,* 746 A.2d 581, 584 (Pa. 2000); *Carson Helicopters, Inc. v. Unemployment Compensation Board of Review,* 960 A.2d 524, 527 (Pa. Cmwlth. 2008).

In this case, it is clear that PLCB's correspondence would satisfy the requirement of a breakdown in the administrative process, specifically, the statement in PLCB's April 10, 2015 letter that the application would be required "within thirty (30) days of the date requested" and the statement in the July 21, 2015 letter that "if this pending transfer is cancelled for any reason, the application for Extension of Safekeeping and fee will be required." (R.R. 88a, 121a (emphasis removed).) These statements were misleading and provided the Bar with the false impression that it was not required to submit the application for an extension of the safekeeping period until after the pending BCKC transfer application was cancelled. Furthermore, PLCB did not later correct its misleading statement. While there is no evidence that PLCB acted improperly here, evidence of a malicious intent is not required when a public officer or agency makes misleading statements that ultimately lead to the late filing. Thus, in *Union Electric*, our Supreme Court held that *nunc pro tunc* relief was warranted for the appellants where a county board of assessment issued an order granting an extension of a deadline for filing a tax assessment appeal that went beyond the date specified in the statute of the last day of February of the year in which the assessment becomes effective. 746 A.2d at 582, 584 & n.1. Though there

16

was no indication that the county board acted intentionally to subvert the appellants' right to appeal, the Court held that the board "was cloaked with apparent authority" when it extended the appeal deadline in violation of express statutory language and the appellants reasonably relied on the appearance of authority when it relied on the misleading order. *Id*. at 584; *see also Monroe County Board of Assessment Appeals v. Miller*, 570 A.2d 1386, 1387-88 (Pa. Cmwlth. 1990) (holding that county board notice indicating that the appellant would have 60 days to appeal from the decision rather than the 30 days provided by Section 5571(b) of the Judicial Code were unintentionally misleading and therefore provided cause for *nunc pro tunc* relief).

Furthermore, the Bar has satisfied the second and third elements of the *Cook* test for *nunc pro tunc* relief. The Bar acted within a short time of learning that the BCKC transfer application was cancelled on October 1, 2015, filing its application to extend the safekeeping period six days later, on October 7, 2015. Finally, PLCB will not be harmed in any way by allowing the Bar's application to extend the safekeeping period. PLCB argues that the granting of *nunc pro tunc* relief to the Bar would lead to PLCB having to accept dilatory filings by other licensees; however, any potential harm will be easily avoided by PLCB more clearly communicating the deadlines for filings in future correspondence.

Accordingly, we conclude that the application to extend the safekeeping period was timely and should have been accepted by PLCB. Because PLCB has not argued at any stage of these proceedings that the Bar failed to tender the required fee and was not otherwise in compliance with the requirements of the Code or PLCB's regulations as provided by Section 474.1(g) such that an extension of the safekeeping period would be inappropriate, we also affirm the trial court's

17

decision that the application should have been granted and the safekeeping period extended by one year. The decision of the trial court is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gino's Bar, Inc.     :
           :
    v.      :
           : No. 110 C.D. 2018
Pennsylvania Liquor    :
Control Board,      :
           :
     Appellant   :

## **O R D E R**

AND NOW, this 20th day of November, 2018, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.

            **_____**
            **JAMES GARDNER COLINS, Senior Judge**